Jeanne HARRINGTON, Plaintiff-Appellee,

v.

VANDALIA–BUTLER BOARD OF EDUCATION, Defendant-Appellant.

No. 76–2646.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1978.

Decided Oct. 27, 1978.

Rehearing and Rehearing En Banc Denied Dec. 11, 1978.

Larry A. Smith, Young, Pryor, Lynn, Falke & Jerardi, Dayton, Ohio, Nicholas A. Pittner, Means, Bichimer, Burkholder & Baker Co., L.P.A., Columbus, Ohio, for defendant-appellant.

---

Randal S. Bloch, Cincinnati, Ohio, Barbara Kaye Besser, Cleveland, Ohio, for plaintiff-appellee.

Before EDWARDS and ENGEL, Circuit Judges, and NEESE, District Judge.*

ENGEL, Circuit Judge.

The Vandalia-Butler Board of Education (Board) appeals from a judgment of $6,000 [1] and an award of $2,000 attorneys' fees and costs entered in the district court in favor of Jeanne Harrington, a former physical education teacher at Morton Junior High School in Vandalia, Ohio. The district court held that, in furnishing her working conditions inferior to those of male teachers performing the same services, the defendant Board discriminated against plaintiff Harrington on account of her sex, in violation of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1976).[2]

The trial judge's finding that Mrs. Harrington was discriminated against on account of her sex has support in the record. The evidence showed that the facilities provided Mrs. Harrington at Morton Junior High School were neither equal nor even comparable to those provided male physical education teachers. While male physical education teachers were given an office which was totally self-contained and could be locked to insure privacy and prevent theft, Mrs. Harrington's office was a small, unsecure space, carved out of the girls' locker room by a partition providing only partial privacy. Male physical education teachers were provided with a private toilet, lockers and shower facilities for their exclusive use and which they did not share with students. No such private facilities, however, were provided for Mrs. Harrington, forcing her to use the student facili-

---

* Hon. C. G. Neese, District Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. The $6,000 judgment was computed on the basis of $1,000 damages for six years commencing in 1966.

2. (a) Employer practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

ties.[3] The intentionally discriminatory nature of the disparity was shown by evidence that when a male teacher was assigned to teach girls physical education, he was assigned to the larger gymnasium and was not required to move his offices or to work in the girls' gym.

In June, 1972 Mrs. Harrington elected to accept a voluntary disability retirement instead of transfer to another junior high school. She has not since sought to re-enter the Vandalia-Butler system as an active school teacher. While she asserted in her complaint filed in the district court that she was discriminated against in terms of salary and job description and claimed that her disability retirement was forced upon her, tantamount to a constructive discharge from her employer, the district court found these claims had not been established and she does not appeal from the denial of that relief. The district court's only finding of discrimination was in the area of working conditions and its award was compensatory to remedy this violation of Title VII.

I.

▮ The Board's appeal calls for us to decide whether an award of compensatory damages of the nature involved here may properly be included as a part of the remedy provided in Title VII:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

Section 706(g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g) (1976). We hold that the Congress did not intend to authorize the recovery of such damages under Title VII and accordingly reverse.

There is no direct Supreme Court authority and surprisingly little authority among the circuits on the question of whether compensatory damages, in addition to any backpay, can be awarded in a Title VII action. In *Equal Employment Opportunity Commission v. Detroit Edison Company*, 515 F.2d 301 (6th Cir. 1975), *vacated on other grounds*, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977), our court held that punitive damages were not recoverable under Title VII. The same logic which in *Detroit Edison* supported the denial of punitive damages applies equally to compensatory damages:

> The relief provisions of Title VII contained in Section 706(g) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g), do not specifically authorize an award of either compensatory or punitive damages for discrimination in employment practices. . . . [I]n dealing with its power to award punitive damages in this case, the court [district court below] referred to the 1972 amendment to Section 706(g) which provides:

---

3. We reject the Board's claim that Section 703(a)(1) of Title VII and its reference to "terms, conditions, or privileges of employment" was not intended to reach the actual working conditions of employees but rather was intended to be confined to the obligation to provide an equal opportunity for employment apart from the physical conditions thereof. *Potter v. Goodwill Industries of Cleveland*, 518 F.2d 864 (6th Cir. 1975), held that plaintiff had established a *prima facie* case by demonstrating that she was a Negro, that because of her physical disability she needed a stool in order to perform her job, that she did not always have a stool, and that a white woman who needed a stool to perform her job was always provided with one. We do not believe it can be seriously contended that the furnishing of a private office, toilet and showers for male physical education teachers was not a "privilege" within the meaning of Title VII or that the denial to plaintiff of similar facilities as a female physical education teacher did not violate the Act. *Cf. Allen v. Lovejoy*, 553 F.2d 522 (6th Cir. 1977).

[T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

We find no authority in the quoted language for the award of punitive damages. We know of no authority which holds that the awarding of punitive damages is equitable relief. The catchall phrase, "other equitable relief as the court deems appropriate," does not stand alone. It is limited, under the construction doctrine of *ejusdem generis*, to relief of the same kind as that specifically enumerated. While affirmative action may not be limited to the reinstatement or hiring of employees with or without back pay, we believe that it is limited to relief of the same general kind, that is, equitable relief in the form of restitution.

We are not unaware of arguments which have been made in favor of allowing punitive damages in Title VII cases. See Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1261 (1971); Implying Punitive Damages in Employment Discrimination Cases, 9 Harv.Civ.Rights-Civ.Lib.L.Rev. 325 (1974). In two recent district court cases, it has been held that punitive damages may not be allowed in Title VII actions. See *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D.Cal.1973), and *Howard v. Lockheed-Georgia Co.*, 372 F.Supp. 854 (N.D.Ga.1974). In *Van Hoomissen*, the court considered the somewhat sketchy legislative history with respect to Section 706(g) and concluded that Congress did not intend to permit an award of punitive damages in Title VII cases. We have been cited to nothing in the legislative history which would compel a different determination.

In the *Howard* case, the court found that Congress would have made clear any intention to authorize compensatory and punitive damages in Title VII cases. 515 F.2d at 308–09.

Judge Lively's reference to *Van Hoomissen v. Xerox Corporation*, 368 F.Supp. 829 (N.D.Cal.1973), is particularly useful to our consideration of the question of whether Congress intended to permit an award of compensatory damages. District Judge Oliver J. Carter observed in *Van Hoomissen*:

"The question of the propriety of punitive and compensatory damages in Title VII cases has only recently arisen in the courts, and the results have been mixed.

"Some courts have held that punitive damages are an appropriate form of relief in a Title VII case, e. g. *Tooles v. Kellogg*, 336 F.Supp. 14 (Neb.1972) (court struck claim for compensatory relief but allowed claim for punitive damages to be retained).

"Compensatory damages have also been allowed, e. g. *Tidwell v. American Oil Co.*, 332 F.Supp. 424 (Utah 1971) (plaintiff allowed 6% interest on back wages and contributions defendant would have made to group life insurance plan and company savings); *Rosen v. Public Service Electric and Gas Co.*, 477 F.2d 90 (3rd Cir. 1973) (male employees who received reduced retirement benefits where women in the same position were awarded full benefits received the difference).

"Other cases have refused to award any monetary damages other than back pay on the theory that the statute speaks of back pay only as an additional and limited remedy to equitable relief, e. g. *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969) ('The demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy', 417 F.2d at 1125).

"After examining the lengthy legislative history of Title VII, in addition to the briefer history surrounding the 1972 amendments, this Court finds that Congress, when it drew up that part of the statute dealing with remedies for unlawful employment practices, had in mind a

wide panorama of equitable tools that courts might use but did not intend that courts would punish defendants by imposing upon them large money awards in the form of compensatory or punitive damages.

"Although the 1964 discussion in Congress regarding Section 2000e–5(g) is not terribly illuminating, it does seem apparent from a reading of the Congressional debates and the legislative record that the main purpose of Title VII as seen by its proponents was to 'seek to give people an opportunity to be hired on the basis of merit' (remarks by Senator Humphrey in introducing the Civil Rights Bill for debate in the Senate on March 30, 1964, 110 Cong.Rec. 6549). According to the House Report on the Bill, '(t)he purpose of this title is to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment' (House Report No. 914, 1964 U.S.Code Cong. and Admin.News 1964, p. 2401). Additional members of the House Committee which wrote that Report referred to the Commission, the administrative body which would in large part carry out the purpose of the Title, as an agency which would work in a corrective, not a punitive, manner: 'It must . . . be stressed that the Commission must confine its activities to correcting abuse, not promoting equality with mathematical certainty . . . Its primary task is to make certain that the channels of employment are open to persons regardless of their race' (*Id.* at p. 2516).

"Again in 1972, when the amendment giving the Commission power to go into court on its own was being debated, the Title was again referred to primarily as a tool to ensure that opportunities for employment were in fact equal: it was not described as a punitive measure against those who frustrated equal employment. 'Most people just want to work. That is all . . . We are trying to see that all of us, no matter what race, sex, or religious or ethnic background, will have an equal opportunity in employment'

(Representative Dent, 118 Cong.Rec. 1866–67, March 8, 1972).

\* \* \* \* \* \*

"The Senate analysis of the 1972 amendment to § 2000e–5(g) accurately reflects the current sense of unease and uncertainty over the use of punitive damages in Title VII cases:

'The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the scope of relief . . . is intended to make the victims of unlawful discrimination whole . . . (and restore them) to a position where they would have been were it not for the unlawful discrimination.' (118 Cong.Rec. 3462).

"In one breath the Senators note that the equitable powers given to the courts are extremely broad; in the next they speak rather imprecisely of making a person 'whole'. What is intended by that second goal? The problem mirrored here has been a source of confusion among the district courts.

"However, in addition to the general legislative history which indicates that the remedies intended were those provided for in § 2000e–5(g), there are further factors which lead this Court to believe that Congress meant what it said in § 2000e–5(g) and that it meant no more.

"The provisions of § 2000e–5(g) of Title VII are modeled closely upon the National Labor Relations Act, 29 U.S.C. §§ 160(b) and 160(c). In 29 U.S.C. 160(c), the remedies provided for are 'affirmative action, including reinstatement of employees, with or without back pay.' Punitive damages cannot, and have not been, awarded under this Act (*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 235–236, 59 S.Ct. 206, 219, 83 L.Ed. 126 (1938)). Neither have compensatory damages, aside from back pay, been allowed.

"In explaining and introducing the Civil Rivhts [sic] Bill, Senator Humphrey in his address and Senators Clark and Case as Floor Managers refer to the fact that the relief under Title VII is similar to that available under the National Labor Relations Act (110 Cong.Rec. 6549, and 110 Cong.Rec. 7214). Although not conclusive, the similarity of the two statutes and the fact that Congress was aware that neither punitive nor compensatory damages were allowed under the National Labor Relations Act leads to the firm belief that Congress did not intend that any money damages other than back-pay would be granted under the present statute. . . . No reference has been made in either the Title VII or the Title VIII statutes to compensatory damages."

368 F.Supp. at 836–38 (footnotes omitted).

We note that while the district judge here was not persuaded by the analogy in *Detroit Edison, supra,* another judge of the same court has twice ruled that compensatory damages are not available. *Smith v. Columbus Metropolitan Housing Authority,* 443 F.Supp. 61 (S.D.Ohio 1977); *Compston v. Borden, Inc.,* 424 F.Supp. 157 (S.D.Ohio 1976). Likewise *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063 (D.Me.1977), in holding that compensatory damages are not recoverable under Title VII, observes that:

> While there is a split of authority on the issue, the clear majority of federal courts, upon an analysis of the language and statutory history of Title VII, have concluded that neither compensatory nor punitive damages are available in a Title VII case, and this Court is persuaded to join them.

435 F.Supp. at 1078 and *see* authorities cited therein. *See also Pearson v. Western Electric Company,* 542 F.2d 1150 (10th Cir. 1976).

Accordingly, we hold that compensatory damages of the type awarded here are not authorized under Section 706(g) of Title VII.

## II.

■ It was not until March 24, 1972, that Title VII of the Civil Rights Act of 1964 was amended to apply to the federal government, state and local governments and educational institutions.[4] For this reason appellant claims that the district court was without jurisdiction to permit an award of damages for acts of discrimination occurring prior to the effective date of the amendment. This claim, if correct, would limit the damages, in any event, to such as might have been found to have been suffered between March 24, 1972 and June, 1972 when Mrs. Harrington took her retirement.

Because this issue appears to have been raised for the first time on appeal, we do not choose to address it. *Hutton v. United States,* 501 F.2d 1055, 1062 (6th Cir. 1974).

## III.

■ Because plaintiff has not prevailed, we conclude that the district court's award of attorneys' fees made under Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1976), must likewise fail. It is true, of course, that the plaintiff succeeded in obtaining a judicial determination that the defendant Board discriminated against her in the conditions of her employment. This determination, standing alone, does not in our judgment suffice to constitute her as a prevailing party within the meaning of the Act.

In order to be a "prevailing party," a plaintiff must have been entitled to some form of relief at the time suit was brought. Here, Mrs. Harrington failed to establish her claim that she was constructively discharged or that she was discriminated against in the salary she received. Thus neither backpay, reinstatement nor injunctive relief was awardable. She has not shown herself entitled to any relief under the Act and it is apparent that she was not so entitled at the time she commenced the district court action.

4. Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103.

This case is distinguished from our decision in *Seals v. Quarterly County Court of Madison County, Tennessee*, 562 F.2d 390 (6th Cir. 1977). There we allowed an award of attorneys' fees even though the plaintiffs did not recover on their federal action, the suit being settled under pendent state law claims.[5] The plaintiffs could apparently have prevailed under their federal claim and received relief thereunder. *Marr v. Rife*, 545 F.2d 554 (6th Cir. 1976), similarly is not inconsistent with the decision here. In *Marr v. Rife*, the plaintiffs, following a successful showing of discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (1976), were awarded $1.00 nominal damages and, as the prevailing party, also were awarded attorneys' fees. In *Marr v. Rife*, unlike here, the statute expressly authorized an award of damages, 42 U.S.C. § 3612(c), the plaintiff merely being unable to establish the amount. Mrs. Harrington, however, never had any right to any relief under the statute at the time suit was brought. Under such circumstances it is not possible to determine that plaintiff is a prevailing party and is thereby permitted an award of attorneys' fees. An opposite result would, in our judgment, run counter to the statute and would only serve to encourage fruitless litigation.[6]

Reversed and remanded for entry of judgment in favor of the defendant.

---

**5.** Although the attorneys' fees issue in *Seals* was decided under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976), rather than under Title VII, the standards for awarding attorneys' fees have been held to be generally the same. *See Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978).

**6.** In *Compston v. Borden, Inc., supra*, the court held that the plaintiff proved the essential elements of a Title VII claim but backpay and injunctive relief were not available because of the factual posture in which the case reached trial. The court nonetheless awarded attorneys' fees. To the extent *Compston* is inconsistent with the opinion herein, it is not the law in this circuit.