**Bennie D. JONES, Plaintiff,**

v.

**GLITSCH, INC., Defendant.**

**Civ. A. No. 3–78–1039–H.**

United States District Court,
N. D. Texas,
Dallas Division.

May 22, 1980.

Kenneth H. Molberg, Dallas, Tex., for plaintiff.

Ernest E. Figari, Jr., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

SANDERS, District Judge.

This is a suit about race discrimination in employment based on Title VII, 42 U.S.C. §§ 2000e et seq. Plaintiff Bennie D. Jones alleges that his former employer, Glitsch, Inc., discriminated against him on the basis of his race (Black-American) when Glitsch terminated him in 1976. The Court bifurcated the trial. The liability phase of the case was tried August 28–29, 1979, after which the Court entered Findings of Fact and Conclusions of Law declaring Glitsch had discriminated against Jones on the basis of race. The Court found Glitsch discriminated against Jones by discharging him rather than assigning him to lighter duty work after an on-the-job injury. On February 25, 1980, the Court heard evidence on the issue of appropriate relief.

Plaintiff asks the Court to enter an order requiring Glitsch to place him in one of six jobs Jones has identified as "light duty" jobs.[1] He also wants the Court to enjoin Glitsch from discriminating against him on the basis of race, a hiring order, back pay, and attorney's fees. Defendant Glitsch argues that the Court should deny Jones a job at Glitsch and back pay because of his lack of physical or skill qualifications, the lack of job openings in lighter duty jobs, or both—in short, that no relief be granted to Plaintiff.

Defendant underestimates the flexible nature of the remedies provided in 42 U.S.C. § 2000e–5(g), and the insistence of

---

1. These jobs are spot welder, punch press operator, brake press operator, tool crib attendant, messenger/driver, and office clerk. The first three jobs each have an Operator A and Operator B classification. "A" jobs tend to require more skill and experience, and consequently pay better than "B" jobs. At one time Jones worked as a messenger/driver at Glitsch. He has never been on the payroll as a spot welder, punch press operator, or brake press operator, but he testified he has done these jobs occasionally while working at Glitsch as a fork lift operator.

the courts that relief be granted where discrimination has been found. The Court concludes that Plaintiff, having been discriminated against, is entitled to relief. Failure to give any relief to a plaintiff who has suffered a Title VII injury would thwart the purposes of the statute and contradict decisions of the United States Supreme Court and the Fifth Circuit.

## I. FACTS

Briefly summarized these are the facts found by the Court on October 1, 1979, after the trial on liability. Bennie Jones, a Black-American male, had a good employment record at Glitsch, Inc. for the twelve years he worked there. Findings 1, 3, 7, 8, 9. He was a fork lift operator at the time of his termination in November 1976. During 1976 he injured his back while he was working. He tried several times to return to his job and operate the fork lift, but he found his back injury was too painful for him to work. Finding 10. The last time he returned to work he asked for lighter duty work, but was told to go home. Finding 13. Several days later on November 9, 1976, Glitsch fired Jones, allegedly for "inability to perform assigned duties." Findings 14, 15.

Findings of Fact 16 through 25 detail the evidence supporting the Court's conclusion that Jones' discharge and the failure to assign him lighter duty work was caused in part by race discrimination. The five most important indicia of discrimination were: (1) the summary nature of the discharge and Glitsch's unexplained failure to use its progressive discipline system which would have given Jones a warning; (2) lack of credibility of Glitsch's testimony regarding the non-availability of lighter duty jobs at the time of Plaintiff's discharge; (3) disparate treatment between blacks and whites who had been injured on the job; (4) the credibility of Jones' avowed desire to work at a lighter duty job; and (5) the disproportionately high number of black discharges in 1975 and 1976.

The Court now makes the following Supplemental Findings of Fact, based on the February 25, 1980, hearing:

1. From November 8, 1976, through February 1980 Plaintiff had the physical capability and skill (with minimal training) to perform the job of messenger/driver at Glitsch.

2. Glitsch does not indefinitely retain any employee on its payroll who is physically disqualified from performing any type of light duty work, or who lacks the requisite skills for a job. A white employee whose physical condition had deteriorated like Jones' had at the time of the relief trial in February, 1980, could not have expected to be retained on the payroll indefinitely.

3. Between the time of the liability trial (August 28–29, 1979) and the relief trial (February 25, 1980) Jones' back injury had worsened to such an extent that at March 1, 1980, he was not able to perform any light duty job at Glitsch. The Court bases this finding on Jones' testimony in February about his increased difficulty in movement, and on the Court's observation of the difference between Jones' physical appearance in August 1979 and his physical appearance in February 1980.

4. Since November, 1976 there have been minimum wage jobs available in the Dallas area which could be performed by a person with a back injury with no special skills. Jones could have found such a job by using reasonable diligence.

## II. RELIEF

The relief section of Title VII, 42 U.S.C. § 2000e–5(g), authorizes these remedies: injunction, reinstatement or hiring, back pay, "or any other equitable relief as the court deems appropriate." Title VII has been recognized as a vehicle for giving equitable relief to those who have suffered discrimination. *United States v. Georgia Power Co.*, 474 F.2d 906, 927 (5th Cir. 1973). Glitsch contends that Jones, whom the Court has declared to be the victim of race discrimination, is not entitled to any relief. The Court profoundly disagrees.

Glitsch's argument ignores the well-established equitable principle that eq-

uity will not tolerate a wrong without granting a remedy.

> The constant tendency of the court is to find some way in which damages can be awarded when a wrong has been done. Difficulty in ascertainment is no longer confused with right of recovery.

*Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 565–66, 51 S.Ct. 248, 251, 75 L.Ed. 544 (1931), quoted in *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1380 (5th Cir. 1974) (Title VII case). Furthermore, in order to implement the purposes of Title VII, this Court must give a wide scope to the relief accorded a Title VII plaintiff. *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d at 1375; *Rowe v. General Motors Corp.*, 457 F.2d 348, 354 (5th Cir. 1972).

■ Controlling in the remedy phase of a Title VII suit is the "rightful place" principle. Pursuant to this principle a person discriminated against should be assured the first opportunity to move into the next available vacancy which he would have occupied but for the discrimination and which he is qualified to fill. *United States v. Georgia Power Co.*, 474 F.2d at 927; *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 243–44 (5th Cir. 1974). Application of the "rightful place" principle is an attempt to reconstruct the work history of the plaintiff as it would have been had there been no discrimination. *Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 148, 149 (5th Cir. 1978).

A tacit assumption of the "rightful place" approach is that a discrimination victim must be qualified for the job he seeks in the absence of the discrimination before he is entitled to an injunction, a hiring order, or back pay. The court in *McCormick v. Attala County Board of Education*, 541 F.2d 1094, 1095 (5th Cir. 1976) (per curiam), charted the course for evaluating the evidence at the remedy stage:

> The principles governing a discriminatee's right to back pay and individual injunctive relief in this circuit are clear. Once discrimination is proved, a presumption of entitlement to back pay and indi-

vidual injunctive relief arises. The burden of proof then shifts to the employer to show by clear and convincing evidence that the discriminatee would not have been hired absent discrimination. *Mims v. Wilson*, 5 Cir. 1975, 514 F.2d 106, 110; *Cooper v. Allen*, 5 Cir. 1972, 467 F.2d 836, 840. If the employer cannot meet this burden, then back pay must be awarded unless special circumstances are present. *Pettway v. American Cast Iron Pipe Co.*, 5 Cir. 1974, 494 F.2d 211, 253.

### A. Hiring Order

■ At the time of his disability Jones was having difficulty operating the fork lift, because of his injury. He still is not physically able to perform the fork lift job, and so cannot be reinstated to that post. The position Jones would have occupied but for the discrimination—his "rightful place" —is a lighter duty job. This Court determined (October 1, 1979, Order) that Glitsch would have made available a less strenuous job for Jones if he had been white, regardless of whether an opening existed. Of course, Glitsch is not required to place Jones in a job he is not qualified to fill due to his physical condition or because he lacks the skills the job requires. *See United States v. Georgia Power Co.*, 474 F.2d at 927; *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d at 243–44. The Court must reconstruct all the evidence impacting on Jones' qualifications for a lighter duty job. This historical reconstruction is complicated by the fact that Jones' physical condition has worsened since the date of his discharge, and has even deteriorated between the trial on liability and the trial on relief. The law requires that the reinstated person be qualified for a job before the Court will order that he be placed in that job. A hiring order is inappropriate if a person is no longer qualified for the particular position. *Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598, 603 (7th Cir. 1979); *cf. Donnell v. General Motors Corp.*, 576 F.2d 1292, 1301 (8th Cir. 1978) (no back pay if plaintiff cannot satisfy the physical limitations of job).

The Court is of the opinion that Jones is no longer physically qualified to fill any of the light duty jobs at Glitsch. He therefore cannot be granted a hiring order.

The Court could order Glitsch to give Jones the next available opening in a light duty job which he would have occupied but for the discriminatory discharge. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d at 243–44; *United States v. Georgia Power Co.*, 474 F.2d at 927. Glitsch escapes this remedy only because of the fortuitous (for Glitsch) circumstance of Jones' deteriorating back injury.

### B. Injunction

Because Jones will not be working at Glitsch in the future, an injunction to cease discriminating against him is inappropriate. Jones has requested a mandatory injunction to make his employment records reflect this Court's finding that his discharge was caused by racial discrimination. The Court doubts the efficacy of such relief. The Court does, however, direct Glitsch to delete from Jones' employment record any references or inferences that he was discharged for "inability to perform assigned duties." This relief, which is authorized by the "other equitable remedy" language of 42 U.S.C. § 2000e–5(g), may in part prevent any future damage to Jones from his wrongful discharge by Glitsch.

### C. Back Pay

■ The Supreme Court has ruled that back pay is an integral part of the Title VII scheme. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *accord Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1376 (5th Cir. 1974); *United States v. Georgia Power Co.*, 474 F.2d 906, 921 (5th Cir. 1973). The Court should not decline to award back pay if to do so would undermine the two-fold purposes of Title VII: eliminating unlawful employment discrimination and compensating the economic injuries of the discrimination victim. *Albemarle Paper Co. v. Moody*, 422 U.S. at 417–19, 95 S.Ct. at 2371–72.

■ The District Court's discretion in declining to award back pay is very limited. *See id.* at 415–17, 95 S.Ct. at 2370–71. The rationale for this narrow discretion and the standards by which it is exercised have been stated thus:

> Because of the compensatory nature of a back pay award and because of the "rightful place" theory, adopted by the courts, and of the strong congressional policy, embodied in Title VII, for remedying employment discrimination, the scope of a court's discretion to deny back pay is narrow. [Citations omitted] Once a court has determined that a plaintiff or complaining class has sustained economic loss from a discriminatory employment practice, back pay should normally be awarded unless special circumstances are present.

*Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252–53 (5th Cir. 1974). Glitsch's argument that no job openings exist does not satisfy the "special circumstances" exception. The Court has found that Glitsch would have located a lighter duty job if Jones had been white. However, Glitsch has demonstrated by "clear and convincing evidence" that Jones was not in 1976 qualified (physically or by his skills) to perform five of the six light duty jobs he wants. Of course, just as with a hiring order, a person who is no longer physically able to perform a job is not entitled to back pay during the period of his disability. *See Donnell v. General Motors Corp.*, 576 F.2d 1292, 1301 (8th Cir. 1978).

Due to his back injury Jones in 1976 could only perform light duty work, which this Court views as work which would not aggravate his back injury. Because of the back injury Jones could not have been assigned to, and can receive no back pay for, the jobs of brake press operator (which Defendant has proved requires lifting dies which weigh several hundred pounds), or punch press operator, which also require physical work beyond Jones' ability. The Court has doubts as to Jones' ability to perform the physical work required of a tool crib attendant. Nor can Jones receive back pay for the lighter duty job of clerk-

typist; he does not possess the requisite typing skills. Similarly, the spot welder post requires ability to read blueprints, which Jones cannot do.

But there is one job at Glitsch which Jones has performed in the past, which he had the skills to perform (or with minimal training could perform) and which does not require much physical work or skill—the position of messenger/driver. The Court believes that Jones could have performed this job during the period November 9, 1976, to March 1, 1980, and is entitled to back pay therefor. The Court finds that by March 1, 1980, Jones' back injuries had worsened to such an extent that he was unable to perform even this job, and that such condition is likely to continue.

In computing back pay, the Fifth Circuit has recognized two governing principles:

(1) Unrealistic exactitude is not required, and

(2) Uncertainties should be resolved against the discriminating employer. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 260–61 (5th Cir. 1974); *see also Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d at 1380, (5th Cir. 1974) (". . . [I]n many instances proving entitlement to back pay will be based on probabilities. . . . Onerous and speculative limits should not be utilized as a bar to the restoration process.") The formula for calculating back pay like all Title VII relief involves a process of historical reconstruction of plaintiff's work history. Plaintiff is entitled to back pay from the date he would have been paid (November 9, 1976) absent discrimination to the date he would have terminated employment, less mitigation.[2] *Mims v. Wilson*, 514 F.2d 106, 110 (5th Cir. 1975).

The statute directs the Court to reduce Plaintiff's back pay award by "amounts earnable with reasonable diligence." 42 U.S.C. § 2000e–5(g). The burden of proving reasonable diligence and the amount of mitigation is upon the defendant. Glitsch's

proof on mitigation was conclusory and imprecise. Two experts testified there were jobs (requiring little or no skill or physical work) available in Dallas during the relevant period which could be classified as light duty, and which jobs Plaintiff could have located if he had exercised reasonable diligence; no evidence was presented from which the Court could compute the amounts earnable from such jobs. The Court has found that such jobs were available and could have been located by Jones "with reasonable diligence." Supp. Finding No. 5, *supra*. The Court will use the federal minimum wage as the basis for calculating the "amounts earnable" at such jobs.

Defendant argues that Plaintiff should not be awarded any back pay because Plaintiff could have found work at a wage comparable to his wage at Glitsch. Defendant's proof did not support this contention. In any event, it would undermine the purpose of Title VII to find Glitsch guilty of discrimination and yet afford Plaintiff no significant relief, by way of back pay. If the Court sustained Glitsch's argument, any employer located in a prosperous economic area could violate the statute with impunity. The debilitating effect on Title VII of this kind of argument is obvious and the Court rejects it.

As requested by the Court the parties filed on May 16, 1980, a stipulation regarding earnings with respect to mathematical calculations of earnings, from which the Court determines that Jones should be awarded back pay in the sum of $16,594.88, which sum is computed as follows: $34,-103.68 (salary at mid-point rate for messenger driver, November 9, 1976, to March 1, 1980) less $17,508.80 (federal minimum wage for the same period).

### D. Attorney's Fees

█ Defendant says Plaintiff is not a "prevailing party" within the meaning of 42 U.S.C. § 2000e–5(k), and so cannot be

---

**2.** Mitigation is required by 42 U.S.C. § 2000e–5(g):

"Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

awarded his attorney's fees. The Court disagrees, finding that the statutory purpose and case authority are to the contrary.

Plaintiff became a "prevailing party" when the Court held with Plaintiff and determined that Glitsch had discriminated against Plaintiff on the basis of race. This finding alone entitles Plaintiff to attorney's fees. The Supreme Court in a Title II case has said a plaintiff who succeeds in proving discrimination should be awarded attorney's fees "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The Court has applied this standard to Title VII attorney's fee awards. *Albemarle Paper Co. v. Moody*, 422 U.S. at 415, 95 S.Ct. at 2370 (1975). Plaintiff does not have to be awarded all the relief he seeks to be a "prevailing party." *Brown v. Boorstin*, 471 F.Supp. 56 (D.D.C.1978).[3] Awards of attorney's fees encourage enforcement of Title VII, in accordance with the purpose of the statute and underlying public policy.

The parties have stipulated Plaintiff's attorney's fees to be $16,000. The Court finds this is a reasonable sum, and it will be awarded as part of the judgment.[4] In the event of an appeal, Plaintiff can make application for additional attorney's fees at the proper time.

Plaintiff will forthwith submit to the Court (not later than 5:00 P.M., May 29, 1980) a Judgment in accordance with this Opinion.

SO ORDERED.

---

**3.** Defendant cites *Harrington v. Vandalia-Butler Bd. of Educ.*, 585 F.2d 192 (6th Cir. 1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979), for the proposition that a plaintiff must be awarded damages to be a "prevailing party." *Harrington* is inapposite because in *Harrington* plaintiff did not prevail on her claim of discriminatory discharge. Moreover, the Fifth Circuit has rejected the Sixth Circuit restrictive view of Title VII remedies. *See Claiborne v. Ill. Cent. R.R.*, 583 F.2d 143, 154 (5th Cir. 1978).

As it turns out Jones is a "prevailing party" within Defendant's interpretation of *Harrington*. He will be awarded some money as back pay. But the Court does not base the award of attorney's fees on the fact that in this case the mitigation amount does not wipe out the back pay award. Even if "special circumstances" existed to justify denial of back pay, or even if the back pay was totally eliminated by actual or possible wages, this Court would still treat this plaintiff as a "prevailing party" and would award attorney's fees for the policy reasons stated in the text.

**4.** The Court bases the conclusion that the stipulated fee is reasonable on these factors:

(1) The reputation, skill, and experience of Plaintiff's attorney in handling Title VII cases;

(2) The competence and aggressiveness of the defense attorney who mounted a "never give an inch" defense;

(3) The rather low rate of success of individual Title VII suits, particularly those based on subtle, nonovert, acts of discrimination.