780 F.2d 1021
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
SHARON L. FOSTER, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 84-6025
 United States Court of Appeals, Sixth Circuit.
 11/18/85
 
 REMANDED
 W.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 JONES and WELLFORD, Circuit Judges; and, DeMASCIO, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff, Sharon Foster, a black female, sued Ford Motor Company (Ford), her former employer, under Title VII, 42 U.S.C. Sec. 2000e et seq., based on an alleged retaliatory discharge arising out of sex discrimination. The district court held for the employer-defendant, Ford, finding that the discharge was not caused by any intent to retaliate against Foster for her participation in an on-going sex discrimination class action case then pending against Ford (Meadows v. Ford Motor Company, # CI-7005-A (W.D. Ky. 1979)).
 
 
 2
 The district court made a number of findings of fact, including a finding that plaintiff had made out the requisites of a prima facie retaliation Title VII case, but he also found that defendant Ford 'has articulated a legitimate, non-retaliatory reason for plaintiff's discharge.' The district court cited Sutton v. National Distillers Products Co., 445 F.Supp. 1319 (S.D. Ohio 1978), aff'd, 628 F.2d 936 (6th Cir. 1980) as setting the standards for proof in such a case, but indicated there was 'conflicting authority' as to whether the employer's articulated non-discriminatory reason 'must be entirely free from retaliatory motive.' Following these findings, a plaintiff in a Title VII case will then 'have a full and fair opportunity to demonstrate pretext,' and 'retains the burden of persuasion . . . that the proffered reason was not the true reason for the employment decision.' Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).
 
 
 3
 Plaintiff has raised four issues in this appeal.
 
 
 4
 1. Whether the district court's decision was based on an erroneous legal standard.
 
 
 5
 2. Whether the decision of the district court was clearly erroneous.
 
 
 6
 3. Whether the district court abused its discretion in denying appellant's motion to compel discovery.
 
 
 7
 4. Whether punitive damages are available in Title VII cases.
 
 
 8
 Foster received an opportunity for employment at appellee Ford's Louisville, Kentucky Truck Plant through participation in the Title VII class action suit against Ford previously mentioned. She was hired by Ford in November of 1977 as an assembly line worker. While still in the probationary phase of her employment, Foster was laid off as part of a general, plant-wide layoff on February 7, 1978. Foster apparently did satisfactory work for Ford during that period. On March 6, 1978, Foster testified in the Meadows case to determine her eligibility, if any, for back pay and retroactive seniority. Upon her return home from testifying, she received a telephone call from Ford recalling her to work.
 
 
 9
 Upon her return, Foster was assigned to the gasoline engine line, and received training from a male co-worker. The job entailed using a small airgun to put on dust shields and connect wire, clamps, and hoses to the engine. She was also to use a larger airgun weighing from 30-50 pounds to put on certain parts. The larger airgun was suspended from the ceiling by a balancer to permit the user to press against the large airgun without lifting it. When the employee would fall behind in production, however, he or she would have to life the large airgun from the balancer, carry and use it several feet down the assembly line. Foster alleged she received only two days of a required three day training period, but this allegation was controverted at trial. Foster also claimed that her job was intended to be a two-person job, and that she was left to work alone. Other contrary testimony suggested that it had always been a one-person job. Foster further stated that at the conclusion of her training period, the large airgun was no longer suspended by the balancer, forcing her to lift and maneuver it manually. She claimed that she repeatedly complained about the problem and the serious problems it caused her, and this was corroborated to some extent by another employee. Ford supervisory people gave testimony which was somewhat conflicting in this regard. In any event, Foster was unable to keep up with production requirements and her foreman and supervisor repeatedly warned her about this as it affected the assembly line. They then asked her if she were going to quit, and when she declined, she was discharged before the expiration of her probationary period. The stated reason given being unsatisfactory performance.
 
 
 10
 Foster timely filed with EEOC against Ford a charge of retaliatory discharge. The EEOC issued a determination that there was 'reasonable cause to believe that the allegation regarding retaliation is true . . .' and also mailed to Foster a notice of right to sue. After the bench trial, the trial court stated that 'the question of whether or not plaintiff's sex played any part in her discharge is a close one.' Judge Allen concluded that 'while possibly [the discharge] may have been hasty and ill-advised, [it] was not caused by a desire of plaintiff's supervisors to retaliate against her for having participated in the Meadows litigation.'
 
 
 11
 The trial court did not make specific findings in this case, however, that appear necessary to determine on review whether the reason for discharge given was pretextual or whether retaliation may have been a 'motivating factor' in the discharge. The district court judge decided this case without benefit of our articulation of the causation standard required in 'dual motive' Title VII cases, Blalock v. Metals Trades, Inc., No. 84-3714 (6th Cir. Oct. 24, 1985). Nor did the district court have the benefit of our decision in another recent alleged retaliatory discharge case, Jackson v. RKO Bottlers of Toledo, 743 F.2d 370, 377-78 (6th Cir. 1984). We are compelled, therefore, to remand this matter for further particular findings in light of these cases. Specifically, the court should address the reason plaintiff failed to meet production; whether the airgun was no longer suspended from the ceiling because the balancer was inoperable, whether she received the usual amount of training for the job, whether the condition of or problem with the airgun was called to her foreman's attention, and whether the job was a 'single person' job.
 
 
 12
 In affecting the remand, we find no error in the district court's ruling on discovery, and affirm that plaintiff, in any event, is not entitled to punitive damages, as claimed. EEOC v. Detroit Edison Co., 515 F.2d 301 (6th Cir. 1975) and 675 F.2d 814 (6th Cir. 1982); Great American Fed. Sav. & Loan v. Novotny, 442 U.S. 366 (1979); Harrington v. Vandalia-Butler Bd. of Education, 585 F.2d 192 (6th Cir. 1978).
 
 
 13
 Since this case arises out of a 1977 discharge, we urge the district court, upon this limited remand, to make the requisite findings expediciously.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation