## 2125

George Earl HORN, Appellant v. DAVIS ELECTRICAL CONSTRUCTORS, INC., Respondent.

(440 S.E. (2d) 398)

Court of Appeals

*James C. Spears, Jr.,* of *Faucette Law Firm,* Spartanburg, *for appellants.*

*Wallace K. Lightsey,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for respondents.*

Heard Dec. 7, 1993. Decided Jan. 24, 1994.

Reh. Den. Mar. 3, 1994.

CURETON, Justice:

This is a retaliatory discharge case, which is here again after remand to the circuit court. The first appeal followed a jury verdict for the employee/appellant, George E. Horn, who was awarded back wages and immediate reinstatement[1] to his position with the employer/respondent, Davis Electrical Constructors, Inc. Finding that the circuit court misinterpreted

---

[1] The circuit court ordered immediate reinstatement pursuant to S.C. Code Ann. § 41-1-80 (Supp. 1991). The court interpreted this statute to require mandatory reinstatment if there was a finding of wrongful discharge.

the statute to require mandatory reinstatement, this Court reversed and remanded the case on the issue of reinstatement and directed the trial court to reconsider the issue in the exercise of its discretion.[2] On remand, the circuit court denied reinstatement in the present circumstances, but directed that Horn be given hiring preference when he presents an expert medical opinion that he is able to do the work demanded by Davis. Horn appeals. We affirm.

## I.

Horn argues the trial court erred by failing to award him back wages from the time of the order of reinstatement until the present, the period during which the appeal in this case was pending. Horn predicates this argument on his right to reinstatement after the trial, maintaining that but for the appeal Davis would have had to reemploy him. The court found Horn failed to prove the amount of wages he would have earned. Horn was an electrician's helper for Davis. The evidence shows that work for an electrician's helper is not steady and that generally electrician's helpers do not stay with one company very long.[3] The burden of proof in this case remained with Horn. *See Horn v. Davis Elec. Constructors, Inc.,* 307 S.C. 559, 416 S.E. (2d) 634 (1992) (Horn II); *Wallace v. Milliken & Co.,* 300 S.C. 553, 389 S.E. (2d) 448 (Ct. App. 1990), *aff'd as modified,* 305 S.C. 118, 406 S.E. (2d) 358 (1991). Thus, Horn bore the burden of proving that the wrongful discharge caused him to lose back wages in the amount which he claims is due. *See Gaddy v. ABEX Corp.,* 884 F. (2d) 312, 320 (7th Cir. 1989) ("Plaintiff had the burden to demonstrate that defendants' misconduct caused

---

[2] *Horn v. Davis Elec. Constructors, Inc.,* 302 S.C. 484, 395 S.E. (2d) 724 (Ct. App. 1990) (*Horn I*), aff'd as modified 307 S.C. 559, 416 S.E. (2d) 634 (1992) (*Horn II*).

[3] According to the testimony of Davis's personnel manager, the average electrician's helper stays with Davis for 1.8 years, but works only one-third of that time. At the rate presented in this record, these figures show that Horn would have stayed with Davis long enough to earn $8,736. During the 1.8 years following the trial, the record indicates Horn was paid between $10,000 to $12,000. Horn acknowledges that Davis should be allowed to offset the total amount Horn would have earned had Davis taken him back in March 1988 against what Horn actually earned. Thus, on the evidence in this record, Horn actually was paid more during these 1.8 years than he would have if Davis had reinstated him.

her to lose all the wages she claims as back pay"). Based on the undisputed evidence regarding the project-by-project nature of Davis's work, we agree with the trial court that Horn's proof of wage loss was speculative.

## II.

Horn next contends the trial court exceeded its authority by taking evidence on his fitness to perform the duties of an electrician's helper. He claims the trial court was bound by the jury's implicit finding that he was fit to work when Davis fired him.

The jury, however, was never asked to determine if Horn is presently able to perform his job; it was asked only whether Horn's discharge, in October 1986, was motivated by his filing of a worker's compensation claim. Several years had passed between the time of the discharge and the time of the remand hearing. The verdict rendered in 1988, implicitly finding that Horn was fit for his job when discharged in 1986, does not establish that Horn is fit for the job now.

When this Court remanded for the trial court to exercise its discretion in ruling on the reinstatement, it was within the trial court's discretion to impose conditions on any reinstatement ordered. *See Macon & B.R. Co. v. Stamps*, 85 Ga. 1, 11 S.E. 442, 447 (1890) ("A court of equity, or a court of law in the exercise of equitable functions, may and should always impose just terms as a condition to its interference . . . in behalf of the suitors."). It was further within the trial court's discretion to receive evidence relevant to any condition that it might consider imposing because the exercise of a trial court's discretion implies conscientious judgment, not arbitrary action, and takes account of the law and particular circumstances of the case, being directed by the reason and conscience of the judge to a just result. *Nienow v. Nienow*, 268 S.C. 161, 232 S.E. (2d) 504 (1977); *State v. Hill*, 266 S.C. 49, 221 S.E. (2d) 398 (1976).

The circumstances of this case show that Davis is a contractor for heavy industrial and commercial electrical work. Most of its work is done in the ceilings of industrial and commercial establishments, which can be anywhere from six feet to 160 feet above the floor. An electrician's helper has to bring tools,

supplies, cable, and other materials to the electrician. Many of these objects weigh over fifty pounds. Electrician's helpers also frequently carry heavy ladders,[4] and climb and descend tall ladders to bring tools and supplies to the electrician. Davis has no light-duty positions.

An electrician's helper who cannot perform the physical labor of the job can pose a risk of injury to himself and others. As Davis's personnel director testified, team work is crucial to the performance of this job. "[I]f one other person is partially physically unable to his side of the work, it's dangerous for not only himself [,] [b]ut for the person he's working with. . . . If they're lifting something together and the person dropped their end, . . . it could seriously hurt the other person."

One of Horn's doctors gave him a 30% permanent impairment rating for the back injury, and advised that any heavy work would cause Horn's condition to get progressively worse. Another of Horn's doctors recommended him for vocational rehabilitation, stating "[i]t is my professional opinion that Mr. Horn is not a good candidate for long-term full recovery to return to his former vocation." Under similar circumstances, other courts have refused to reinstate even though a worker was found to have been fired unlawfully. In *Jones v. Glitsch, Inc.*, 489 F. Supp. 990 (N.D. Tex. 1980), the court held that the defendant-employer had discriminated against the plaintiff-employee in discharging him after an on-the-job injury. The court, however, held that reinstatement was inappropriate because the plaintiff's injury made him unable to perform his job:

> The law requires that the reinstated person be qualified for the job before the Court will order that he be placed in that job. A hiring order is inappropriate if a person is no longer qualified for the particular position.

*Id.* at 993.

In the case now before us, Davis stated it would reemploy Horn as soon as his doctors gave him a full medical release without restrictions as to the type of physical activity in

---

[4] This was how the plaintiff injured his back in October 1986.

which he could engage. Davis considered such a release necessary because the position of electrician's helper demands heavy physical labor.

Horn has not obtained a full release. The release given him by his doctors contained significant restrictions: he could not lift any object weighing over fifty pounds on even an occasional basis; he could not lift objects weighing over thirty-five pounds on a regular basis; and he could not climb ladders over ten feet initially.

Because of these restrictions, an unconditional order of reinstatement would have put Davis in an untenable position: Davis would have had to choose between (a) ignoring the doctors' restrictions by requiring Horn to perform all of his regular job duties, and (b) observing the restrictions by keeping Horn from performing his regular job duties. Option (a) would pose unacceptable risks that Horn might re-injure himself or hurt another person. Option (b) would require Davis to pay Horn even though he was not doing his job. Either option would generate further litigation if Horn injured himself or another while doing work that his doctors told him not to do, or was fired for refusing to do work that his foreman asked him to do. *See Francoeur v. Corroon & Black Co.*, 552 F. Supp. 403, 413 (S.D.N.Y. 1982) ("[T]o order reinstatement here would be to unduly hinder defendant's operations and would create a substantial likelihood of future litigation.").

The record of the remand hearing and the trial court's order show that the trial court properly exercised its discretion in conditioning Horn's reinstatement on a showing that he was capable of the tasks demanded of an electrician's helper. Moreover, even absent a *de novo* hearing, the record still supports the trial judge's findings and order. Thus, we find no abuse of discretion.

Affirmed.

HOWELL, C.J., and GOOLSBY, J., concur.