Arthur Eugene OTHEN, next friend of his daughters, Pamela Evelyn Othen and Janice Julia Othen, Plaintiff-Appellant,

v.

ANN ARBOR SCHOOL BOARD, a public body established under the laws of the State of Michigan, Defendant-Appellee.

No. 81–1259.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1982.

Decided Feb. 2, 1983.

Rehearing Denied March 28, 1983.

Jean L. King (argued), Ann Arbor, Mich., for plaintiff-appellant.

DeVine, DeVine & Serr, Edmond F. DeVine (argued), Ann Arbor, Mich., for defendant-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and CECIL,* Senior Circuit Judge.

LIVELY, Circuit Judge.

In this case a father, suing as next friend of his two daughters, charged the Ann Arbor School Board with sex discrimination in violation of Title IX of Pub.L. 92–318, the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (1976). Because the plaintiff dismissed all his claims for relief at the pretrial stage, the only matter submitted to the district court was the plaintiff's request for attorney's fees. The district court, 507 F.Supp. 1376, denied the motion for an allowance of attorney's fees, and the plaintiff has appealed. We affirm.

I.

A.

The complaint was originally filed by the plaintiff on behalf of his older daughter,

Pamela, on September 21, 1979. Pamela was then a senior at Pioneer High School, expecting to graduate in June 1980. She had been a member of the Pioneer golf team during its autumn 1978 season, but after try-outs, was cut from the 1979 team. No female players made the 1979 team. In order to build for the future the coach decided to admit only the top three seniors, the top three juniors and five sophomores to the golf team in the fall of 1979. Pamela finished fifth in the try-outs with three senior boys ahead of her. She and one senior boy with approximately the same try-out scores were cut.

The plaintiff charged the school board and the golf coach with discriminating against Pamela because of her sex. The complaint sought a temporary restraining order immediately restoring Pamela to the 1979 golf team and ordering that she be permitted to play in every match remaining in the season and a permanent injunction prohibiting discrimination "against women who want to play on the Pioneer golf team." This relief was also requested in a motion for preliminary injunction. After a hearing the district court denied the motion for an injunction upon finding that the plaintiff had not demonstrated a substantial likelihood of success on the merits.

In addition to seeking injunctive relief the prayer of the complaint asked that the school board be required to establish a "career enhancement fund," and that the plaintiff be awarded compensatory damages of $25,000, punitive and exemplary damages of $50,000 and costs and attorney's fees.

B.

The case was set for trial in February 1980, in time for the court to act prior to the spring 1980 golf season. Approximately one week before trial was to begin, however, the plaintiff made a motion to amend the complaint. The court postponed the trial and on May 14, 1980 entered an order

* Senior Judge Cecil was a member of the hearing panel but died before a decision was reached.

permitting the plaintiff to file an amended complaint "in substitution for the original complaint." In the amended complaint the plaintiff sued as next friend of his two daughters. In addition to reciting again the experiences of Pamela Othen with respect to the Pioneer golf team, the complaint stated that Janice Othen had entered Pioneer High School, was then a sophomore and expected to graduate in June 1982. Janice was described as "a good golfer for her age."

The amended complaint contained 200 numbered paragraphs and greatly expanded the scope of the action. It gave details of all the interscholastic athletic programs at Pioneer High School season by season from the fall of 1977 through June 1980. It listed the number of programs for males and the number for females during each sports season, with breakdowns of the numbers of male and female participants and the cost of each program. No claim was made that either Pamela or Janice had desired or sought to participate in any of the programs other than interscholastic golf. There was no attempt to plead a class action.

The prayer for relief in the amended complaint departed radically from that of the original complaint. It sought no damages. In addition to asking for a declaratory judgment that the athletic programs violated Title IX, the plaintiff, in effect, requested a mandatory injunction requiring the school board "to work with" the plaintiff and women's organizations in Indianapolis, Indiana and Cleveland, Ohio "to develop a plan for providing equal opportunity in interscholastic sports for men and women at Pioneer High School." It asked that a specific plan be submitted to the court by August 1, 1980 and after approval that the plan be implemented in the 1980–81 school year. The court was asked to retain jurisdiction over the case and to order the school board to submit to the court each year for three years "a plan for interscholastic athletics at Pioneer for the succeeding year which is responsive to the needs of its students." No specific relief was sought for Pamela or Janice Othen and the only reference to women's golf in the prayer is found in paragraphs 196 and 197 of the amended complaint:

196. Plaintiff prays that this Court order defendant to provide opportunity for Pioneer women to participate in interscholastic golf this spring, including provisions for the participation in post-season tournament play.

197. Plaintiff prays that this Court order defendant to pay (or reimburse Pioneer women for their payment of) greens fees, entry fees, transportation, rental for range balls, and per diems to matches and tournaments in connection with 1980 spring golf practice and competition.

Plaintiff also asked for an award of reasonable attorney's fees, costs and expenses. It is clear that the amended complaint superseded the original complaint.

C.

The defendant responded to the amended complaint with a motion to strike, a motion to dismiss and a motion for summary judgment supported by the affidavit of a school board official who stated that none of the athletic programs or activities at Pioneer High School received federal financial assistance. Based on this assertion, the school board argued that athletic programs were not covered by the provisions of § 901 of the Educational Amendments of 1972, 20 U.S.C. § 1681 (Title IX). That section provides in pertinent part:

(a) Prohibition against discrimination; exceptions

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination *under any education program or activity receiving Federal financial assistance,* ... (Emphasis added).

The affidavit also stated that the golf team at Pioneer had always been open to students of both sexes and that women had tried out and been accepted for the golf team "as their abilities warranted." In addition the motions challenged the standing

of the plaintiff to bring such a broad claim since neither of his daughters had the requisite interest in the overall interscholastic athletic program. The parties filed briefs in support of and in opposition to the defendant's motions and an *amicus curiae* brief was tendered by the Department of Justice in opposition to the motions.

Pending a ruling on the motions, discovery continued. A school official testified that the only financial aid which the board receives from federal sources is "impact aid" under 29 U.S.C. §§ 236–241. Such payments are made to compensate school systems for increased enrollments caused by federal facilities within their boundaries and decreased tax revenues resulting from the presence of tax-exempt federal property. These payments go into the general funds of the Ann Arbor School system and indirectly aid the athletic programs of the various schools.

## II.

The date of hearing on the defendant's motions was December 9, 1980. On that date the plaintiff Arthur Eugene Othen filed an affidavit in which he stated that he "understands that there will be an interscholastic golf team at Pioneer in the spring of 1981 which his daughter Janice will have the opportunity to try out for." The affiant further stated that "these assurances" were satisfactory with him "as a settlement of this case," and that he "withdraws all requests for other remedies, except his request for attorney's fees and costs to be awarded to him as the prevailing party." The "assurances" came as the result of a survey by the school board which indicated enough interest among female students to support a girl's golf team during the 1980–81 school year. Though golf had previously been a fall sport only, plans were being made for a spring golf schedule in 1981. The parties did not enter into a settlement requiring the school board to take this step.

When the case was called for hearing counsel for the plaintiff stated that she and her clients intended "to dismiss all aspects of [their] claim except the claim for attor-

ney fees. . . ." The district court then stated that the plaintiff had, "in fact dismissed all claims in this case except the filing of the attorney fees," and inquired as to the basis of the claim for such fees. When asked by the court if it was her contention that the lawsuit was responsible for the fact that "they've got a golf team," counsel for the plaintiff responded:

That's our contention, yes, either responsible for it directly or was the catalyst that produced it.

The defendant objected that the plaintiff had not prevailed because he had not obtained the relief sought in the amended complaint.

## III.

### A.

The district court determined that an award of attorney's fees and costs could only be based upon a finding that the plaintiff would have been entitled to recover under his pleadings at the time the action was filed. Thus, though all of the substantive claims in the lawsuit have been voluntarily dismissed, the district court proposed to rule on the legal issues raised in the pleadings in disposing of the ancillary question of attorney's fees and costs. Both parties agreed with this conclusion and proceeded to argue the merits of the defendant's motions. The district court subsequently ruled on the motions as if the plaintiff had not dismissed his claims for relief other than attorney's fees. The district court found that the athletic programs at Pioneer High School received no direct federal financial assistance and that any indirect federal assistance from impact aid was "de minimus." From these findings the court concluded that plaintiff had failed to state a claim for which relief could be granted, and denied the application for attorney's fees. *Othen v. Ann Arbor School Board,* 507 F.Supp. 1376 (E.D.Mich.1981). A final judgment dismissing the action was then entered.

## B.

 When a court is asked to award attorney's fees in a civil rights case, the determinative issue is whether the applicant is the "prevailing party" in the action. This is the only standard contained in 42 U.S.C. § 1988 (1976),[1] the statute which authorizes fees and costs in such cases. Decisions under § 1988 have made it clear that it is not necessary for a party to secure a judgment in his favor in order to be a prevailing party. If a party achieves a substantial portion of the relief sought or succeeds on a significant issue as the result of an agreed settlement or a consent decree this is sufficient to support an award of attorney's fees. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Johnston v. Jago,* 691 F.2d 283 (6th Cir. 1982); *Chicano Police Officers Ass'n. v. Stover,* 624 F.2d 127, 131 (10th Cir.1980); *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). A plaintiff may also qualify as the prevailing party if his lawsuit is found to be the "catalyst" which causes the defendant to make significant changes in its past practices, though no direct relief is obtained. *Smith v. University of North Carolina,* 632 F.2d 316, 346–47 (4th Cir. 1980); *Nadeau v. Helgemoe, supra,* 581 F.2d at 279.

It was unnecessary for the district court to decide whether the athletic programs of the Ann Arbor school system were subject to the provisions of Title IX. Before reaching this question of law the court should have made the required factual determination—"Was the plaintiff the prevailing party in this action?" In *Johnston v. Jago, supra,* this court adopted the reasoning of *Nadeau v. Helgemoe, supra,* requiring a factual determination as the first step in deciding whether a party has prevailed in an action which is concluded without trial. If, as a matter of fact, the lawsuit was not causally related to securing the relief obtained, the plaintiff was not a "prevailing party."

 A plaintiff who voluntarily dismisses the entire action except for a request for an allowance of fees cannot be considered the prevailing party unless he can demonstrate that substantial results were achieved by the lawsuit. Here there was neither a settlement nor a consent judgment; the substantive claims were dropped unilaterally by the plaintiff. In view of the extremely broad scope of the amended complaint, questioning as it did every facet of the athletic programs at Pioneer High School, and the wide-ranging relief sought, we do not believe the plaintiff can be considered the "prevailing party" in this action. He asked for no specific relief for his daughters in the amended complaint; instead he sought a court-ordered and court-supervised reorganization of the program of interscholastic athletics at the high school under "a plan for providing equal opportunity ... for men and women." He withdrew his request for all relief on the basis of assurances that there would be a golf team in the spring of 1981 which his younger daughter would have an opportunity to try out for. His older daughter had graduated from Pioneer in June 1980.

The plaintiff obtained none of the relief he sued for. The single change in the athletic program at Pioneer—the establishment of a spring interscholastic golf team for which girls could try out—was not a sufficient change from earlier practices of the defendant to support an award on the theory that plaintiff's lawsuit had been the "catalyst" which caused a significant change. This change was explained by the school board as resulting from a survey of the demand for such a team. The only thing new was a spring golf schedule. There had previously been only a fall sched-

---

1. In pertinent part § 1988 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or in any civil action or proceedings, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

ule for golf, but it is clear that female students had been permitted to play on fall teams. Pamela Othen tried out for the Pioneer golf team in the fall of 1978 and made the team. She had tried out in the fall of 1979, but did not make the team. Janice Othen would be able to try out for a golf team in the spring of 1980. No additional rights for female students resulted from the addition of a spring golf schedule. They had the same right to try out for Pioneer golf teams as before. On the entire record we conclude that the plaintiff was not the prevailing party in this action as required by 42 U.S.C. § 1988.

### C.

In this court both parties continue to maintain that the district court properly considered the merits of the motion to dismiss, while *amici curiae* argue that the court erred in doing so. The defendant supports the district court's decision to reach the merits largely on the basis of this court's decision in *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192 (6th Cir.1978). We do not read *Harrington* to mean that every time a request for attorney's fees is made pursuant to § 1988 the trial court must determine whether the requesting party was entitled to some form of relief when suit was filed. This requirement in *Harrington* arose from the unique facts of that case (the plaintiff suffered discrimination but the only remedy awarded by the trial court was not authorized by Title VII, under which the action was brought). If the requesting party has not prevailed in fact, that is the end of the matter. While the Civil Rights Attorney Fee Act was designed to provide compensation for attorneys who undertake legal action to vindicate the civil rights of groups and individuals, the "prevailing party" requirement forbids the award of fees where no benefit accrues from the action.

The judgment of the district court is affirmed for the reasons set forth in this opinion. The defendant will recover its costs on appeal.