**I. Bertrand CHERNIN & Myron Chernin, Plaintiffs–Appellants,**

v.

**Nancy WELCHANS, Clerk, Cleveland Heights Municipal Court, Defendant–Appellee.**

No. 86–3832.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 20, 1987.

Decided April 11, 1988.

Sheldon Stein, Cleveland, Ohio, for plaintiffs-appellants.

Jules N. Koach, Cleveland, Ohio, for defendant-appellee.

Before MARTIN, JONES and WELLFORD, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The issue on appeal is whether Ohio Rev. Code Ann. Section 5321.01 *et seq.* (Baldwin 1980) (hereinafter O.R.C.), a statutory scheme allowing rent withholding, denies the appellants their fourteenth amendment due process rights. The district court upheld the statutory scheme against inadequate notice and hearing challenges. We affirm.

### I.

O.R.C. Section 5321.01 *et seq.* permit a tenant to deposit his rent payment into a court-maintained escrow account when he believes that his rental unit is not being properly maintained.

In 1984, three tenants living in a Cleveland Heights, Ohio apartment building, owned by appellants Bertrand and Myron Chernin, deposited the rent due for the month of December with the Cleveland Heights Municipal Court Clerk, defendant Nancy Welchans, alleging that the Chernins had failed to fulfill their statutory obligations as landlords. The same three tenants subsequently deposited the January, February and March 1985 rents with Clerk Welchans.

After the tenants had deposited their rent with the clerk, the Chernins filed a complaint in federal district court, naming the three tenants and the court clerk, Nancy Welchans, as defendants. The complaint alleged that the Ohio statutory scheme allowing rent withholding violates the due process clause of the fourteenth amendment because landlords are not given adequate notice of the rent withholding or provided a hearing before or contemporaneously with the withholding and because the statute lacks sufficient safeguards to protect against an erroneous deprivation of property.

After the complaint was filed, the three tenants moved out of the building and the Chernins agreed to dismiss all claims against them with prejudice. The tenants also authorized the release of the escrowed rent payments. As a result, the tenants were dismissed from the suit. The only remaining defendant was Clerk Welchans. Upon the Chernins' motion for partial summary judgment, the district court held that all challenged provisions of the statute withstood constitutional scrutiny except for the provision allowing a trial on the landlord's complaint to occur more than sixty days after the complaint is filed. That provision was stricken as unconstitutional.

The Chernins appeal from the district court's judgment. The State of Ohio and the Cleveland Tenants Organization have filed *amicus* briefs with the court.

### II.

The rent deposit procedure at issue is one of the remedies included in the Ohio Landlord–Tenant Act of 1974. The Act

imposes a number of obligations on residential landlords and provides remedies that tenants may invoke to enforce those obligations. A tenant may deposit his rent with the clerk of the municipal or county court that has jurisdiction in the area where the apartment building is located. However, five procedural requirements must be met before a tenant can employ the rent deposit mechanism.

First, the landlord must be in noncompliance with the obligations imposed by O.R. C. Section 5321.04 or the rental agreement. Under O.R.C. Section 5321.04, the landlord is obligated to comply with all applicable building, housing, health, and safety codes that materially affect health and safety; to make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; to keep the common areas in a safe and sanitary condition; to maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and air conditioning fixtures and appliances, and elevators supplied or required to be supplied by him; to provide garbage cans and arrange for garbage removal if there are four or more rental units in the building; to supply running water, reasonable amounts of hot water and reasonable heat at all times.

Second, the tenant must provide the landlord written notice specifying the acts, omissions, or code violations that constitute the landlord's noncompliance with O.R.C. Section 5321.04 or the rental agreement. O.R.C. § 5321.07(A). The tenant must send this written notice to the person or place where rent is normally paid. *Id.*

Third, the tenant must give the landlord a reasonable time to make the repairs or to respond to the notice of alleged noncompliance. *Id.* § 5321.07(B). A reasonable time is usually thirty days, but may vary according to the "severity of the condition and the time necessary to remedy such condition...." *Id.* During this period, the landlord may respond to the tenant in any fashion that the landlord deems appropriate. The landlord may make the requested repairs or may present reasons to the ten-

ant why the proposed rent deposit should not occur.

Fourth, based on the landlord's response, the tenant must reassess whether there are still adequate grounds to deposit the rent with the clerk, and, if so, whether to deposit the rent. The tenant is not authorized to deposit the rent if, within a reasonable time after notice, the landlord has remedied the conditions specified or refuted the tenant's complaints sufficiently to vitiate any reasonable belief of its validity. *Id.* § 5321.07(A) and (B).

Fifth, the tenant must be current in his rent payments. *Id.* § 5321.07(B). This requirement is imposed even if a government agency has found that the rental unit violates applicable building, housing, health, and/or safety codes and that the violations materially affect the health and safety of the tenants. The obligation is imposed regardless of the length of time that such conditions have existed at the rental premises. *Id.*

If these five requirements have been met, the tenant may then deposit the rent, as it becomes due, with the clerk of the court. *Id.* § 5321.07. Before accepting the rent deposit, the clerk may require that the tenant sign an affidavit swearing that the statutory preconditions to rent deposit have been met. When the tenant has deposited the rent, the clerk must notify the landlord in writing, place the rent in a separate rent escrow account and record the deposit in a separate docket.

As soon as the rent is deposited, and at any time thereafter, the landlord may request a judicial hearing to contest the rent deposit. *Id.* §§ 5321.09–.10. A full evidentiary hearing must be held within sixty days of the landlord's hearing request. *Id.* § 5321.09(B). There is no statutory right to a pre-deposit hearing. During the pendency of the hearing request, the landlord may receive release of the rent deposit for payment of the periodic interest on a mortgage on the premises, the periodic principal payments on a mortgage on the premises, the insurance premiums for the premises, real estate taxes on the premises, utility services, repairs, and other customary and

usual costs of operating the premises as a rental unit. *Id.* § 5321.10(A).

The statute also provides that the tenant may be liable for wrongful rent depositing. If a court finds that the condition about which the tenant complained was the result of an act or omission of the tenant, or that the tenant intentionally acted in bad faith, "the tenant shall be liable for damages caused to the landlord, and for costs, together with reasonable attorneys fees if the tenant intentionally acted in bad faith." *Id.* § 5321.09(D).

### III.

Appellants contend that the Ohio rent withholding scheme, on its face, violates their fourteenth amendment due process rights. Appellants assert that a pre-deprivation hearing is constitutionally required. They also allege that the notice provided by the statute is inadequate. We find that the post-deprivation procedures currently provided by the statute comply with all requirements of constitutional due process.

A. *Applicability of the Due Process Clause to the Challenged Law*

■ The due process clause imposes constraints on governmental decisions which deprive individuals of property interests. Under principles established in prior United States Supreme Court cases, Ohio acknowledges that a landlord's interest or expectation in receiving monies due under a rental agreement is a "property interest" within the meaning of the fourteenth amendment. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972). When a tenant invokes the rent deposit procedure at issue, Ohio law temporarily prevents the landlord from obtaining part of the escrowed funds until the outcome of a trial held within sixty days of the date of the landlord's application for release of rent. Although the deprivation at issue is basically temporary, the due process clause does apply to such deprivations. *Fuentes v. Shevin,* 407 U.S. 67, 92

S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

B. *The Appropriate Test for Due Process*

A basic principle of due process under the fourteenth amendment is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). The United States Supreme Court has consistently held that some form of a hearing is required prior to an individual being *finally* deprived of a property interest. *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The requisite hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The scope and timing of the required hearing varies with the circumstances of the individual case. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed. 2d 484 (1972). Thus, where the length or severity of the deprivation does not indicate a likelihood of serious loss and the procedures underlying the decision to act are reliable so as to minimize the risk of erroneous deprivation, the government may act without providing additional advance procedural safeguards.

To determine exactly what procedures are necessary to protect a particular property interest, courts balance the government's interest against the private interest involved. *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The Supreme Court in *Mathews* established three factors for courts to consider in such situations:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

Depending on the circumstances of the particular case, the hearing called for by the fourteenth amendment may be a pre-deprivation hearing, *see, e.g., Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), or a pre-deprivation abbreviated "opportunity to respond" with a prompt post-deprivation hearing, *e.g. Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), or solely a prompt post-deprivation hearing. *Mathews,* 424 U.S. 319, 96 S.Ct. 893. *See also Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).

The district court applied the *Mathews* test to the challenged statute and concluded that the statute was constitutional except for one minor exception, the provision allowing the court to delay the post-deprivation hearing beyond sixty days. In applying the *Mathews* factors, we reach the same conclusion as the lower court.

### 1. *Private Interests Affected by the Official Action*

In this case, there are two interests at stake. First, landlords have an interest in receiving their rent in a timely fashion. Second, tenants have an interest in living in habitable and decent apartments. Two considerations go into determining whether the private interest at stake is so great as to demand a pre-deprivation hearing. The first factor is the degree of potential deprivation that may be created by a particular state action. This factor looks to the level of suffering that an individual will undergo as a result of the state action. The greater the potential suffering, the greater the need for a pre-deprivation hearing. In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that due process required an evidentiary hearing prior to the state withholding welfare benefits. The Court's decision turned largely on the fact that individuals receiving such benefits were usually living on the margin of subsistence and had no other sources of income:

> The crucial factor in this context—a factor not present in the case of … virtually anyone else whose governmental entitlements are ended—is that termination of and pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits.

*Id.* at 264, 90 S.Ct. at 1018 (emphasis in original). The Supreme Court has applied the same analysis in other situations where the basic necessities of life were threatened to be withdrawn without a pre-deprivation hearing. In *Memphis Light, Gas, & Water Div.,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the plaintiffs had suffered shutoffs of their utilities. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the plaintiff's household belongings had been seized. In *Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the plaintiff's furniture had been repossessed because he had fallen behind on the payments. In *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the plaintiff's wages were garnished because of his inability to pay certain bills.

In all of these cases, the Court held that the due process rights of the plaintiffs had been violated because they had not been granted a pre-deprivation hearing. The Court reached this conclusion because of the substantial interest of the plaintiffs and the extraordinary hardship caused by the deprivation.

Appellants contend that the deprivation caused by the challenged statute places them in the same position as the plaintiffs in the above cited cases. Appellants argue that they rely on the rent payments to pay the mortgage, taxes, utilities, and maintain the apartment building. Appellants further contend that they rely on the rent payments for their daily sustenance.

Appellant's comparison of their plight with that of the plaintiffs in the above cited cases is, quite frankly, difficult to understand. The district court noted that it found the appellants' analogies "strained…. The suggestion that the

temporary deprivation of landowners' rent money rises to the level of the deprivations described above is difficult to accept." *Chernin v. Welchans,* 641 F.Supp. 1349, 1353 (N.D.Ohio 1986). Thus, the potential deprivation faced by the appellants is not as substantial as that faced by the plaintiffs in the above cited cases.

The second factor considered in assessing the magnitude of the private interest is the length of the possible deprivation. *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975). In the instant case, if the landlord acts promptly he may receive his rent within sixty days, provided the rent is being wrongfully withheld. *See* O.R.C. § 5321.09. Additionally, O.R.C. Section 5321.10 permits an immediate hearing and release of all or part of the rent deposit during the pendency of a O.R.C. Section 5321.09 action. When the flexibility and timeliness of the O.R.C. Section 5321.09 hearing date is coupled with the immediate availability of the O.R.C. Section 5321.10 hearing, it is clear that the length of the potential wrongful deprivation under the challenged statute is very short. It should also be noted that under the statute, the landlord has a right to be compensated for damages incurred as a result of wrongful rent depositing. *See* O.R.C. § 5321.09(D). This right of compensation mitigates the severity of any potential rent deprivation. *See, e.g., Mackey v. Montrym,* 443 U.S. 1, 11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979).

Therefore, the landlords' interests affected by the challenged statute are minimal when expeditious postdeprivation hearings are held. The potential deprivation is quite small. Furthermore, any potential deprivation is greatly mitigated by procedural safeguards included in the statute. Balanced against the landlord's interest in the prompt receipt of his rent is the tenant's right to live in fit and habitable conditions, an interest with great weight.

2. *Risk of Erroneous Deprivation and Probable Value of Additional Procedural Safeguards*

The risk of erroneous deprivation under the challenged statute is very small. The statute includes several safeguards that minimize the likelihood of a wrongful deprivation.

First, the statute requires tenants to provide their landlord written notice of their specific complaints thirty days in advance of any rent deposit. O.R.C. § 5321.07(A) and (B). This mandatory notice requirement provides the landlord with notice of the specific conditions about which the tenants are complaining and an opportunity to resolve the matter, including an opportunity to advise the tenants regarding any misinformation on which the tenant's complaint may be based.

Second, tenants are required to be current in their rent. Therefore, the procedure cannot be used for improper purposes by tenants who are in arrears.

Third, the full rent must be paid to a clerk of the court, therefore, tenants cannot use the rent deposit procedure as a means of keeping their rent money for other purposes. This lessens the likelihood of tenants withholding their rent for improper purposes.

Fourth, tenants may be liable for wrongful rent depositing. Thus, the risk of a malicious tenant abusing the process is minimized by this redress afforded to the landlord.

Fifth, the statute implicitly permits the clerk to require the tenant to sign an affidavit swearing that the statutory preconditions to rent escrow have been met. The defendant in this case used such a procedure.

Sixth, the tenants who make use of the rent deposit remedy reside in the rental premises and have first hand knowledge of the premises. The tenants thus possess the information necessary to specify the pertinent conditions that form the basis of their complaints.

Seventh, the clerk of the court notifies the landlord of the rent deposit as soon as it occurs.

The appellants contend that the above procedures are insufficient to meet the con-

**328**

stitutional notice standards. Notice requirements exist, in part, to permit one who is about to be deprived of his property to challenge the deprivation prior to its occurrence. The basic standard for determining whether the notice given comports with due process was set forth in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950):

> An elementary and fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

Due process will be satisfied if the interested party is informed of the impending loss and afforded ample time to present objections. The rent deposit procedure at issue clearly satisfies the *Mullane* test. The landlord is given notice by the tenants prior to a rent deposit and by the clerk of the court immediately after the deposit. This mandatory notice requirement ensures that notice is given in sufficient time for the landlord to have an opportunity to present his objections. *See* O.R.C. § 5321.07. Thus, the mandatory notice by the tenant, as provided for by the statute, is constitutionally sound.

Appellants also claim that the notice provided to landlords does not advise them of the statutory provisions for obtaining release of the rent deposits. Appellants contend that the decision in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), requires a finding of inadequate notice in the present case. In *Craft*, the Court held that a utility company must notify its customers of the company's internal procedures for contesting a proposed termination of utility service.

Appellants' reliance on *Craft* is misplaced. The *Craft* decision was based upon three factors, none of which exists in the present case.

The first factor was that the customers in *Craft* did not have access to any resource that would advise them of the procedure for requesting a hearing. *Craft*, 436 U.S. at 14 n. 14, 98 S.Ct. at 1563 n. 14. The customers had no access to a written statement of the company's procedure. *Id.* Their opportunity to learn of the procedure, "if it existed at all, depended on the vagaries of 'word of mouth referral.' " *Id.*

In the present case, landlords have access to a written statement of the procedure for obtaining release of rent deposits. The procedure is set forth in the applicable statute and is readily available to everyone.

The second factor was that the property interest at issue in *Craft*, uninterrupted continuity of electric service, was "essential to health and safety." *Craft*, 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15. The property at issue in the present case, rental income, neither constitutes nor is comparable to a threat to health and safety.

The third factor was that the customers in *Craft* were lay consumers of electric service and persons of various levels of education, experience, and resources. *Craft*, 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15. In contrast, the residential landlords in the present case are not lay consumers, but rather are the suppliers of residential rental properties. Furthermore, the landlords who are subject to the rent deposit procedure are only those who own four or more rental units. *See* O.R.C. § 5321.07(C). These real estate investors can reasonably be expected to possess or acquire a certain degree of knowledge regarding the residential landlord-tenant business that they voluntarily have entered, including knowledge of Ohio's residential landlord-tenant act.

In *Craft*, the Supreme Court noted that "[i]n a different context a person threatened with the deprivation of a protected interest need not be told 'how to complain.' " *Craft*, 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15. For the foregoing reasons, the present case is distinguishable from *Craft* and is an example of a context in which due process does not require that an individual receive a written or oral notice of "how to complain."

Therefore, by focusing on the rent withholding scheme as a whole, including its mandatory notice requirements, it is clear that the notice provided for is reasonably likely to reduce the risk of erroneous deprivation and therefore is constitutionally adequate.

■ Appellants also insist that the lack of a pre-deprivation hearing gives rise to an excessive risk of erroneous deprivation. We disagree. The probable value of additional or substitute safeguards, such as a pre-deprivation hearing, would be negligible. The appellants suggest that an alternative procedure, *i.e.*, having the tenant file suit against the landlord asking the court to order repairs or the escrow of rent, would likely reduce the possibility of an erroneous deprivation. It is true that such a procedure might reduce the risk of an erroneous deprivation. That alone, however, does not mean that the challenged statute is improper. The due process clause has never been construed to require that all government acts assure perfect, errorless determinations. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

The district court made three general findings with respect to this prong of the *Mathews* test. The court found that the current procedure is designed to reduce the risk of wrongful rent depositing. Second, the court found no evidence in the record that wrongful rent depositing is a common occurrence. Third, the court found no evidence in the record to support a finding that the pre-deprivation hearings proposed by plaintiffs would have any substantial value in respect to reducing the risk of wrongful rent depositing. *Chernin v. Welchans*, 641 F.Supp. 1349, 1355 (N.D.Ohio 1986).

After balancing the risk of erroneous deprivation under the existing procedure and weighing the value of the proposed additional safeguards, the district court concluded that the "second prong of the *Mathews* test militates somewhat in favor of the constitutionality of the current process." *Chernin*, 641 F.Supp. at 1355.

These findings and conclusions are fully supported by the record.

### 3. *Government Interest*

The final prong of the *Mathews* test concerns the government's interest in retaining the challenged procedure. Courts must consider two categories of government interest. The first is the government's interest in the policy that the state action advances. The second is the government's interest in minimizing its administrative and fiscal burdens. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

In the instant case, the policy that the state action advances is that of ensuring that adequate housing conditions exist in Ohio. The challenged statute is designed to protect the health and welfare of the tenants of rental properties. The statute directly serves the state's interest in the health and welfare of its citizens. Such an interest is clearly substantial.

The government also has a substantial interest in having housing disputes between private citizens resolved with as little government intervention as possible. The challenged statute minimizes the administrative and fiscal burdens for the government as well as the costs for the private citizens engaged in the dispute. The rent deposit procedure minimizes government involvement in landlord-tenant disputes by relying first on private resolution of the dispute and then on judicial intervention. The private resolution component is comprised of two distinct stages. The first is the tenant's notice to the landlord and the reasonable time thereafter in which the landlord may respond to the tenant. The second is the tenant's deposit of rent with the clerk of the court. At either of these stages, the landlord and tenant may resolve the dispute quickly and without any judicial intervention. Judicial intervention is required only if the dispute is not resolved in the private resolution stages. The administrative and fiscal burdens of judicial proceedings are thus avoided whenever the private resolution stages successfully resolve the dispute. The government clearly has a compelling inter-

est in minimizing its involvement in such relatively minor disputes as landlord-tenant disagreements.

The proposal offered by appellants as an alternative, having tenants file suit against the landlord when housing conditions are violative of the housing code, involves the government at a much earlier stage and increases expenses. The lower court so noted:

> The state government's interest in the existing statutory provisions is substantial and proposed alternatives would unreasonably interfere with the policies advanced by existing law. Proposed alternatives would also significantly add to the fiscal and administrative burdens of municipalities throughout the state, making the alternatives particularly difficult to justify in this era of governmental fiscal austerity. The third prong of the *Mathews* test weighs heavily in favor of maintaining the current statutory plan.

*Chernin*, 641 F.Supp. at 1357. The record contains ample support for this finding.

### 4. *Balancing the Three Prongs*

Upon balancing the three *Mathews* factors, the district court concluded that the statutory scheme was constitutionally sound except for the provision allowing a court to stay a hearing beyond sixty days after the landlord's request for a hearing. The court therefore severed that portion of the statute and held that "with that alteration, the statute withstands full constitutional scrutiny." *Chernin*, 641 F.Supp. at 1358. The court's conclusion is not erroneous and Ohio's rent withholding statutory scheme, on its face, complies with all constitutional due process requirements.

### IV.

Following disposition of the case, the district court ordered that each party bear its own costs and attorneys' fees. Appellants contend the court erred in allocating costs in this fashion because they are prevailing parties within the meaning of 42 U.S.C. § 1988 (1982) and are entitled to an award of counsel fees.

Section 1988 provides that: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable fee as part of the costs."

A prevailing party is ordinarily entitled to an award of attorney fees under Section 1988 absent special circumstances that would render the award unjust. *Newman v. Piggie Park Enterprises, Inc.* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

██ A judge's decision on whether to award or not award attorneys fees will not be reversed absent an abuse of discretion. The court's decision not to award attorneys' fees in the instant case was not an abuse of discretion. Appellants' contention that they are prevailing parties is wishful thinking. In *Othen v. Ann Arbor School Board*, 699 F.2d 309 (6th Cir.1983), this court held that a party would be considered a prevailing party if he "achieves a substantial portion of the relief sought or succeeds on a significant issue...." *Id.* at 313. Here, the primary relief sought by appellants was a declaratory judgment finding the challenged statute unconstitutional. No such declaratory judgment was issued by the district court. In fact, the court found that with one minor exception, the Ohio statutory scheme was constitutionally sound. Therefore, appellants were not the prevailing party within the meaning of Section 1988 and are not entitled to attorneys' fees.

Therefore, for all of the foregoing reasons, the judgment of the district court, in its entirety, is hereby AFFIRMED.

WELLFORD, Circuit Judge, concurring in part and dissenting in part.

While I do not necessarily disagree with the reasoning expressed by Judge Jones on the merits, I doubt it is necessary for us to reach the constitutionality of the entire Ohio law under the circumstances. I believe all challenges to the statute raised by this case, save one, have been rendered

moot. The Chernins and their tenants reached a settlement agreement authorizing release of the money deposited in escrow and dismissing claims for money damages. The tenants have moved. No real, live, active legal controversy between these private parties continues to exist. The defendant Clerk of the Cleveland Heights Municipal Court has paid out the funds held in escrow in accordance with § 5321.08 of the statute. (All the funds deposited were disbursed except one per cent charged as court costs under § 5321.08(D)). The only aspect of the statutory scheme, at issue in light of the developments after the suit was filed, then, relates to the one percent fee assessed as court costs. § 5321.08(D).

We should not reach out to judge the constitutionality of the Act except as to the one provision which remains at issue. A ruling on that one subsection would not bring the entire Act on landlord and tenant rights into question. Appellants' 33 page brief mentions this provision only once, and almost in passing: "[t]he rent remains on deposit until the landlord takes affirmative action to secure its release—and then he is penalized because he must pay court costs and because he forfeits 1% of the escrow—regardless of the propriety of the escrow."

In fact, § 5321.09(D) of the Ohio statutes plainly provides that if the court finds that the escrow procedure was improperly instituted by the tenant at fault, the tenant may be liable in damages and for costs. On the face of the statute then, as appellants have evidently ignored or overlooked, the landlord may recoup the one per cent costs provided in § 5321.08(D) under § 5321.09(D) if the tenant is at fault or acting in bad faith. I would find that this portion of the statutory scheme is not unconstitutional and that appellants have made no real effort to demonstrate otherwise. I would not go beyond this point to determine the constitutionality of the entire scheme because I believe in so doing we are rendering, in essence, an advisory opinion on constitutionality in a situation now moot.

This is not a situation capable of repetition and evading judicial review. *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The landlords and tenants have voluntarily terminated their dispute and the tenants have moved from the premises and have agreed not to litigate further the underlying dispute between them. The action was not brought by the Chernins as a class action. *See Sosna v. Iowa,* 419 U.S. 393, 399–401, 95 S.Ct. 553, 557–58, 42 L.Ed.2d 532 (1975); *cf. Dunn v. Blumstein,* 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1972).