**Jennifer KISSINGER, Plaintiff,**

**v.**

**BOARD OF TRUSTEES OF the OHIO STATE UNIVERSITY—COLLEGE OF VETERINARY MEDICINE, et al., Defendants.**

**No. C–2–90–887.**

United States District Court, S.D. Ohio, E.D.

Feb. 27, 1992.

Kathaleen Beth Schulte, Columbus, Ohio, and Gary L. Francione, Newark, N.J., for plaintiff.

James E. Pohlman, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the plaintiff's motion for attorney's fees under 42 U.S.C. § 1988, asserting that she is a "prevailing party" under that section in having successfully secured the relief sought in this action.

### FACTS

The plaintiff, Jennifer Kissinger, is a veterinary student at the defendant veterinary college (hereinafter the "college") at The Ohio State University (hereinafter the "University") in her fourth year. Ohio State's College of Veterinary Medicine prides itself on being one of the best veterinary colleges in the nation, owing in part to a strong and demanding curriculum. The college curriculum required students, in their third year of study, to perform surgical procedures on live animals acquired for educational purposes. The animals are anesthetized during surgery, and subsequently euthanized. It appears that upon her application to the college, Ms. Kissinger was asked if she had any objections to the live animal surgery requirement, and she responded that she did not. In January of her second year, however, she first approached some of the faculty requesting an alternative program because performing surgery on live animals solely for educational purposes was contrary to her religious beliefs.

It further appears from the record that the college's first response to Ms. Kissinger's request was negative, for the reason that many of the faculty members felt that there was no substitute for live animal surgery to properly train its veterinary students. The college expressed an unwillingness to compromise the quality of its curriculum by incorporating alternative courses of inferior educational value. Upon Ms. Kissinger's persistence and repeated appeals, however, the college appointed an ad hoc committee from the faculty to consider and develop an alternative curriculum that would avoid the use of animals acquired for educational purposes, but still provide a quality of education and experience equivalent to that provided by live animal surgery. The college emphasized that the purpose therein was not to provide an option just for Ms. Kissinger, but to develop an alternative curriculum that would be available for any veterinary students who did not wish to participate in live animal surgery. Ms. Kissinger was informed that it would take some time for the committee to develop an alternative curriculum, and that it might not be available at the beginning of her third year.

It appears that the committee began writing to other veterinary colleges requesting information about whether they had instituted alternative curricula. Meanwhile, on September 13, 1990, attorneys for the University sent Ms. Kissinger a letter, advising her that an alternative curriculum could not be provided, and that she would have to complete the current curriculum

requirements, including live animal surgery, or fail. On October 6, 1990, however, the Dean of the college sent her a letter, offering to allow her to withdraw from the techniques course (which required live animal surgery), and continue with her other didactic course work without blemishing her record, stating:

> In consulting with the faculty they have agreed to allow you the opportunity to drop these courses while continuing with the remainder of the third year didactic course work. These surgical and technique courses (VM 620, 621, & 622) are still required to continue into the fourth year program. This would, however, eliminate an E[1] on your records and would not adversely affect any future decision that you might want to make, including the possibility that at some future time we might have adjusted our program to include an alternative acceptable to you, or you might decide to transfer to another school or another program, or other options that might be more difficult than (sic) if an E appeared on your record.

Ms. Kissinger did not respond to this offer, but instead filed this action on November 30, 1990, alleging inter alia that the college denied her the right to free exercise of religion, free speech, freedom of association, due process, and equal protection.

After the initiation of this lawsuit, the committee continued its investigation into an alternative curriculum, and finally offered Ms. Kissinger an alternative acceptable to her in April, 1991. Thereupon, Ms. Kissinger's attorneys filed a motion for attorneys fees as a "prevailing party."

### STANDARD OF REVIEW

■ 42 U.S.C. § 1988 provides in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

(emphasis added.) While the statute does, by its very language, provide the court with discretion in awarding attorney's fees, this discretion is not without limitations. "The prevailing party should ordinarily recover attorney fees unless there are special circumstances which would render a fee award unjust." Mosley v. Hairston, 765 F.Supp. 915, 918 (S.D.Ohio 1991), citing Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983).

■ Where a plaintiff has been adjudicated victorious in a civil action, there is no question that he or she is a "prevailing party" under 42 U.S.C. § 1988 and therefore entitled to recover costs and attorney's fees. Where the cause of action has terminated prior to trial, however, determining whether the plaintiff prevailed is more difficult. The United States Court of Appeals for the Sixth Circuit has adopted a two-part test in determining whether one is a "prevailing party" under 42 U.S.C. § 1988: the plaintiff must show that (1) the lawsuit was causally related to obtaining the relief; and (2) there is a minimum basis in law for the relief obtained. Johnston v. Jago, 691 F.2d 283, 286 (6th Cir.1982), citing Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir.1978).

### LAW AND ANALYSIS

A. *Is Plaintiff a "Prevailing Party" under 42 U.S.C. § 1988*

1. Was the lawsuit causally related to the relief obtained?

■ Whether or not the plaintiff obtained the relief sought as a result of the lawsuit is a factual determination. Johnston v. Jago, 691 F.2d 283, 286 (6th Cir. 1982). "The key issue is the provocative role of the plaintiff's lawsuit." Nadeau v. Helgemoe, 581 F.2d 275 (1978). "A plaintiff may also qualify as the prevailing party if his lawsuit is found to be the 'catalyst' which causes the defendant to make significant changes in its past practices." Othen

---

**1.** "E" is the university-wide notation for a failing grade at the University.

*v. Ann Arbor School Board,* 699 F.2d 309, 313 (6th Cir.1983), quoted with approval in *Loudermill v. Cleveland Board of Education,* 844 F.2d 304, 312 (6th Cir.1988).

The plaintiff points out that the college initially told her that it could not offer an alternative program for one student, and that although an ad hoc committee was subsequently formed, as late as September 13, 1990, counsel for the University advised her that the college would not be able to offer an alternative curriculum at all, and that she must either complete the required curriculum or receive a failing grade.

The college, however, maintains that it offered the alternative curriculum to Ms. Kissinger not for the purpose of legal settlement, but rather "dealt with Miss Kissinger's concerns as academic and administrative matters, not legal issues." Plaintiff's Exhibit 20. The college points out that an ad hoc faculty committee was formed months before this lawsuit was filed for the very purpose of developing an alternative curriculum, provided that one could be developed that was the educational equivalent of the standard curriculum. There is evidence, in the form of memoranda, letters, and other documents, which demonstrates that the committee was working toward this goal from May, 1990 to April, 1991, principally by researching the curricula of other veterinary colleges.

The most compelling evidence for the plaintiff is the September 13, 1990 letter from counsel for the University, advising Ms. Kissinger that an alternative curriculum was not available and that she had the options of fulfilling the current requirements, failing out of the college, transferring to another college, or choosing another career. Undoubtedly Ms. Kissinger could reasonably have regarded this as a final refusal of her requests, even though there is evidence that in fact the college had *not* made a final determination that it would not offer an alternative curriculum.

The defendant has not satisfactorily explained to the court why counsel for the University sent the September 13, 1990 letter to the plaintiff, when the committee was still developing an alternative curriculum. In the absence of such explanation, the reasonable inference is that Ms. Kissinger was unequivocally told before filing this litigation that there would not be an alternative available to her, but after filing this lawsuit, the college did provide an alternative curriculum. Although the college may have offered the alternative in order to rid itself of burdensome litigation, this does indicate that the lawsuit was indeed a "catalyst" in securing this result. Therefore, for purposes of this motion, the court will assume that Ms. Kissinger has satisfied the first half of the two-part test.

2. Has the Plaintiff established a basis in law for the relief obtained?

■ With respect to the second prong of this test, the United States Court of Appeals for the First Circuit has said:

Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. *If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.*

*Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978), quoted with approval in *Johnston v. Jago,* 691 F.2d 283, 286 (6th Cir.1982) (emphasis added). From this, it appears that the question is whether the defendant's actions were "required by law." The *Nadeau* court further noted that this determination does not require a full trial on the merits:

[W]e believe the court has had sufficient exposure to the facts and law of this case to determine, whether if plaintiffs had continued to press their claims under traditional constitutional theory, their actions could be considered "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648

(1978) (the standard under which defendants may be entitled to attorney's fees under the 1964 Civil Rights Act).[2] If the court reaches that conclusion, we think it should deny plaintiffs' attorney's fees on those issues regardless of the impact of their suit on defendant's willingness to [provide the requested relief].

*Nadeau,* 581 F.2d at 281, cited with approval in *Johnston v. Jago,* 691 F.2d at 286.

■ Plaintiff here repeatedly refers to her pleadings in support of her contention that her claims are not "frivolous, unreasonable or groundless," implying that this court cannot look beyond the pleadings in making this determination. Although *Nadeau* and *Johnston* make clear that such a determination is not to entail a "full trial on the merits," the language in *Nadeau* indicates that a court should consider matters outside the pleadings. For example, when the *Nadeau* court remanded the case to the district court, it noted that "the [district] court has had sufficient exposure *to the facts and law of this case* to determine, *whether if plaintiffs had continued to press their claims under traditional constitutional theory,* their action could be considered 'frivolous, unreasonable, or groundless.'" *Nadeau,* 581 F.2d at 281 (emphasis added). This implies that it requires exposure to the facts and law of a case to make such a determination. Furthermore, the language, "whether if plaintiffs had continued to press their claims," indicates that a court should consider the *continuing* viability of the claims as the case developed, and not just their frivolity on the face of the pleadings. Thus, this court is not restricted to the pleadings to

determine whether there is legal merit to the plaintiff's claims, and may consider all of the facts and law of this case in determining whether there is some minimum basis in law for the plaintiff's claim that the First Amendment entitled her to an alternative curriculum.

■ In *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the defendants were dismissed from their jobs for use of the hallucinogen peyote. The defendants challenged the constitutionality of this action under the Free Exercise Clause of the First Amendment, claiming that their use of the peyote was part of their religious ceremony. The Court determined that it was unnecessary to require a "compelling government interest" to justify the prohibition of the use of the drug, because the law was one of general neutral applicability, and not aimed at any particular religion. The court noted, for example, that if the law prohibited the use of the drug only in this religious ceremony, then it would violate the Free Exercise Clause. The Free Exercise Clause does not, however, "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id.* at 879, 110 S.Ct. at 1600, quoting *United States v. Lee,* 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982) (Stephens, J., concurring in judgment). Thus, the Court distinguished between government regulation of religious beliefs, which is prohibited by the first amendment, and government regulation of conduct associated with religious

---

**2.** As parenthetically noted by the *Nadeau* court, whether a complaint is "frivolous, unreasonable, or groundless" is the test articulated in *Christiansburg* for whether the *defendant* is entitled to attorney's fees, not for whether or not to award a *plaintiff* attorney's fees. ("The question in the case before us is what standard should inform a district court's discretion in deciding whether to award attorney's fees to a successful *defendant* in a Title VII action." *Christiansburg,* 434 U.S. at 417, 98 S.Ct. at 698 (emphasis in original.)) In fact, the *Christiansburg* Court specifically refuted the argument that prevailing defendants are to be awarded attorney's fees in such actions on the same basis as are plaintiffs,

since policy considerations favor awarding fees to plaintiffs, but not to defendants. *Id.* at 418, 98 S.Ct. at 698–99. It is not clear why the *Nadeau* court indicated that courts may use this criteria for denying a plaintiff attorney's fees, and no court adopting the two-part *Nadeau* test has considered this. In fact, the Sixth Circuit, in *Johnston v. Jago,* simply stated that "[t]he Court in *Nadeau* proceeded to emphasize that this legal inquiry does not entail a full trial on the merits. Rather, the trial court need only consider whether the plaintiff's claim is 'frivolous, unreasonable or groundless.'" 691 F.2d at 286.

beliefs, which is not prohibited by the first amendment.

In *Vandiver v. Hardin County Board of Education*, 925 F.2d 927 (6th Cir.1991), the Sixth Circuit extended the *Smith* holding beyond the context of criminal law, to a situation where a plaintiff claimed that high school equivalency testing requirements violated his religious beliefs and thus were prohibited by the Free Exercise Clause. The court found that the testing requirement was "a valid and neutral law of general applicability within the meaning of *Smith*, so that a free exercise challenge is presumably precluded." *Vandiver*, 925 F.2d at 932.

The curriculum requirements in the instant case were obviously *not* aimed at regulating religious beliefs. The curriculum was a valid and neutral rule of general applicability within the meaning of *Smith* and *Vandiver*. Although compliance with the curriculum may have required conduct of the plaintiff that was offensive to her religious beliefs, "the first amendment does not prevent the government from regulating behavior associated with religious beliefs." *Vandiver*, 925 F.2d at 932. This is especially true where the conduct is required as a result of wholly voluntary attendance at an educational institution.[3]

Plaintiff contends that she falls within the exceptions of *Smith*, so that its reasoning does not apply to this case. The Court does not agree.

An exception to the *Smith* holding is that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Smith*, 494 U.S. at 884, 110 S.Ct. at 1603. The plaintiff has not proved to this court that there was a system of individual exemptions.

Another exception that has been implied from the *Smith* holding is where "hybrid claims ... raise a free exercise challenge coupled with other constitutional concerns." *Vandiver v. Hardin County Board of Education*, 925 F.2d at 927. For example, *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), involved free exercise claims coupled with the right of parents to direct their childrens' upbringing. The plaintiff asserts that her claim is just such a "hybrid claim," because in addition to the free exercise claim, she asserted causes of action under the due process, free speech, and freedom of association, and equal protection clauses.

As already established, this court may look beyond the plaintiff's pleadings in determining whether or not these constitutional clauses provided "some minimum basis in law" for the relief the plaintiff obtained. Thus, although the plaintiff may have plead causes of action under more than one constitutional theory, she must first have been entitled to relief based on more than one constitutional theory. The Court does not make that finding in the instant matter.

The Plaintiff's equal protection claim attempts to piggyback her free exercise claim, alleging that the defendants' conduct "creates a state classification of discrimination against students with her religious and

---

**3.** The Supreme Court refused to find compulsory military training as part of a college curriculum unconstitutional because of its offensiveness to religious beliefs in *Hamilton v. Regents of the University of California*, stating that:

California has not drafted or called them to attend the university. They are seeking education offered by the State and at the same time insisting that they be excluded from the prescribed course solely upon grounds of their religious beliefs and conscientious objections to war, preparation for war and military education.... [A]ppellants' contentions amount to no more than an assertion that the

due process clause of the Fourteenth Amendment as a safeguard of "liberty" confers the right to be students in the state university free from obligation to take military training as one of the conditions of attendance.

293 U.S. 245, 262, 55 S.Ct. 197, 204, 79 L.Ed. 343 (1934). Although this case was brought under the due process clause (prior to the application of the First Amendment to the states), it evidences an unwillingness in the Court to find constitutional rights in avoiding part of a required curriculum at an educational institution where attendance is voluntary.

moral beliefs." Complaint at 19. This court finds, however, that the curriculum requirements are neutral rules of general applicability, and not aimed at restricting any religious or moral beliefs. There is no discrimination against religious or moral beliefs.

Plaintiff's free speech and freedom of association claims were predicated upon alleged actions by the college following her request for an alternative curriculum, to wit, inquiring into her religious beliefs, telling her not to "make waves," and instructing faculty members not to speak to her. The defendants have flatly denied these allegations, but regardless of their veracity, it is clear that there is no connection between the alleged suppression of plaintiff's free speech and free association and the relief she obtained, to wit, the alternative curriculum.

The Plaintiff also invoked the due process clause of the Fourteenth Amendment, alleging that the defendants' denial of her request for an alternative curriculum violated her "fundamental rights." The Supreme Court has never recognized such a fundamental right as the plaintiff seems to be invoking here; to the contrary, the Court denied such a constitutional claim in similar circumstances. *Hamilton v. Regents of the University of California,* 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934).

The Plaintiff's procedural due process claim is not related to the relief obtained; the appropriate relief in a procedural due process claim is a hearing. There has been no such hearing.

In sum, this court does not find a basis in law under any of the plaintiff's constitutional claims for the relief she obtained. Thus, she does not satisfy both parts of the two-part test, and is not entitled to attorney's fees.

**B.** *This court's discretion in awarding attorney's fees*

As noted above, § 1988 by its very language vests the courts with discretion as to whether or not to award attorneys fees. This has been interpreted as meaning that a court should generally award attorney's fees, unless the circumstances render a fee award unjust. *See, e.g., Mosley v. Hairston,* 765 F.Supp. 915, 918 (S.D.Ohio 1991), *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983).

This Court finds that this is a case in which a fee award would be unjust. Therefore, even should the plaintiff have passed the two-part test, attorney's fees would not be granted in this case.

At the time she applied for admission into the veterinary college, Ms. Kissinger was not only notified that live animal surgery was a curriculum requirement, but she also affirmatively indicated that she had no objections. It was not until January of her second year that she notified the college that she desired an alternative. Undoubtedly it takes some time to develop a curriculum that satisfies the high educational standards of the college, and it seems the plaintiff here placed the college in a circumstance in which it was hard pressed to develop an alternative in time for the plaintiff's third year of attendance at the college. Further, there is no evidence that the college acted in bad faith in considering the plaintiff's requests; to the contrary, it is clear that the college gave her requests due and full consideration.

## CONCLUSION

The Court recognizes no right, constitutional or otherwise, of a student that requires an educational institution to tailor its curriculum or method of teaching to that student's personal beliefs, particularly where attendance at the educational institution is purely at the will of the student. An educational institution has a strong interest in developing a standard curriculum for all students to follow, without numerous individual exceptions to fit individual beliefs which might compromise the quality of the education or the reputation of the institution. Students have no right to tell their teachers how they are to be taught.

Wherefore, upon being duly advised, and pursuant to 42 U.S.C. § 1988, plaintiff's

motion for attorney's fees is not well taken and is hereby DENIED.

IT IS SO ORDERED.