**Roger DOVER, Plaintiff-Appellant,**

v.

**Jim ROSE, Warden, Defendant-Appellee.**

No. 82–5213.

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1983.

Decided June 6, 1983.

Robert E. Hoehn (argued), Watkins, McGugin, McNeilly & Rowan, Nashville, Tenn., for plaintiff-appellant.

William M. Leech, Jr., Atty. Gen. of Tenn., David M. Himmelreich, Asst. Atty. Gen. (argued), Nashville, Tenn., for defendant-appellee.

Before ENGEL and CONTIE, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiff Roger Dover appeals from a district court order denying his motion for attorney's fees under the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988. The issue presented in this appeal is whether the plaintiff is the "prevailing party" for purposes of the statute. For the reasons stated below, we affirm.

I.

In November 1978, the plaintiff was convicted of second degree murder by a Tennessee state court. Shortly thereafter, the court ordered that the plaintiff be transferred to the Tennessee State Penitentiary to await the outcome of his appeal.[1] Under Tennessee law, a certified copy of the prisoner's sentence of conviction (commitment papers) must be delivered to the warden of the prison along with the prisoner. *Tenn. Code Ann.* § 41–21–104. If these documents are not received, the prisoner is not classified and instead is held in the prison's maximum security unit under the designation "Not In Count" (NIC). The record indicates that prisoners in maximum security live under much more restrictive conditions than other inmates within the institution.

In this case, the judge who presided over plaintiff's trial did not forward a copy of plaintiff's commitment papers to the state penitentiary. The record indicates that this omission was a common practice of several Tennessee trial judges when a convicted prisoner was transferred to the state penitentiary to await an appeal. As a result of the state court's omission, the plaintiff was held in maximum security for approximately 11 months without any classification hearing. When his conviction was finally affirmed in October 1979, plaintiff's commitment papers were forwarded to the penitentiary and plaintiff was classified as a medium security prisoner. This classification allowed the plaintiff to enter the general prison population.

Thereafter, plaintiff filed a *pro se* complaint against "Jim Rose, Warden" under 42 U.S.C. § 1983. The plaintiff alleged that he had been confined in the maximum security unit without the benefit of procedural safeguards. The plaintiff also claimed that he had suffered physically during this period. The complaint requested compensatory damages of $20 per day for every day spent in the maximum security unit. There was no request for injunctive or declaratory relief.

After a hearing on plaintiff's due process claim, the district court held that all convicts who are committed to the state peni-

1. State trial judges in Tennessee have the authority to transfer prisoners in county jails to the state penitentiary or the nearest branch prison "where, because of the insufficiency of the county jail, or for any other cause, the court may be of opinion that the safekeeping of the convicts may require it, ...." *Tenn.Code Ann.* § 40–23–107(a); *Chisom v. State,* 539 S.W.2d 831, 833 (Tenn.Cr.App.1976).

tentiary have a protected liberty interest in being classified within a reasonable time, and that plaintiff's due process rights had been violated by the 11 month delay. The court also found, however, that the plaintiff was entitled to no damages because (1) defendant's culpability, if any, was limited to mere negligence, (2) the trial judge's omission was the probable cause of plaintiff's injury, and (3) in any event, plaintiff's damages were *de minimus.* Since the plaintiff had only sought compensatory damages, the district court dismissed the action. The plaintiff did not appeal this judgment.

In September 1981, the plaintiff moved for attorney's fees as the "prevailing party" under 42 U.S.C. § 1988. The district court initially granted this motion after finding that its prior opinion "amounted to a declaratory judgment, vindicating the plaintiff's constitutional rights as well as establishing standards for future application of prison regulations, but awarding no damages."

The district court later reversed itself, however, and vacated its prior order granting plaintiff's motion for attorney's fees. The court first explained that "[i]mplicit in its holding that defendant Rose would not be liable for damages was a finding that he was entitled, on the facts of the case, to a defense of qualified good faith immunity." Moreover, while the district court had previously characterized its initial opinion as being similar to a declaratory judgment, it now stated that its opinion "had none of the remedial effects of a typical declaratory judgment since no further action could be taken to enforce the order." After finding that the plaintiff was actually entitled to no relief whatsoever, the district court ruled that the plaintiff had not prevailed for purposes of section 1988. Plaintiff appeals.

## II.

The Civil Rights Attorney's Fees Awards Act of 1976, amending 42 U.S.C. § 1988, provides in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, . . . the court,

in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The Act's purpose is set forth in the Senate Report which accompanied the bill:

The purpose and effect of [the statute] are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. . . . All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5909–10.

We note at the outset that the issue of whether a party has prevailed for purposes of section 1988 is a threshold determination which must be made before the statute is applied. *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). If the court determines that the plaintiff is the prevailing party, the plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912; *Price v. Pelka,* 690 F.2d 98, 101 (6th Cir. 1982); *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d at 633.

■ In order to be a prevailing party for purposes of section 1988, a plaintiff must establish his entitlement to some form of relief on the merits of a substantial claim. *Reel v. Arkansas Dept. of Correction,* 672 F.2d 693, 697 (8th Cir.1982); *Busche v. Burkee,* 649 F.2d 509, 521 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). The plaintiff may accomplish this by obtaining a favorable final judgment on the merits, or by obtaining relief through a consent judgment or other settlement. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *Hanrahan v. Hampton,* 446 U.S. 754, 756–57, 100 S.Ct. 1987, 1988–89, 64 L.Ed.2d 670 (1980); *Johnston v. Jago,* 691 F.2d 283, 285 (6th Cir.1982). This circuit has also indicated that a plaintiff may qualify as a prevailing party if his lawsuit acts as a "catalyst" which causes the defendant to make significant changes in its past practices, though no direct relief is obtained. *Othen v. Ann Arbor School Board,* 699 F.2d 309, 313 (6th Cir.1983).

The plaintiff contends that he has prevailed because his lawsuit resulted in a finding that the prisoners in the Tennessee prison system have a protected liberty interest in being classified within a reasonable time. Therefore, the plaintiff argues, his lawsuit "clarifies the status of all NIC prisoners and defines the respective rights and duties of both prisoners and the state officials to whom they are entrusted."

■ That the plaintiff's lawsuit resulted in the discovery of a protected liberty interest does not, in itself, justify a finding that the plaintiff has prevailed under section 1988. Indeed, the district court opinion did nothing to advance plaintiff's claim for relief. While the court did find a constitutional violation, the defendant was found to be immune from compensatory damages, which was the only relief requested by the plaintiff. Even if, as plaintiff now contends, this action was brought against the defendant in his official capacity, the plaintiff would still be denied compensatory damages on the basis of sovereign immunity. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). The plaintiff did not seek declaratory or injunctive relief, and thus the correctional officials at the state penitentiary have not been enjoined from failing to classify NIC prisoners within a reasonable time.[2] Since the district court could award no relief to the plaintiff, it dismissed the action. Thus, while the plaintiff may claim a "moral victory" in this lawsuit, he has failed to prove that he is entitled to any relief whatsoever. *Cf. Harrington v. Vandalia-Butler Board of Education,* 585 F.2d 192, 197 (6th Cir.1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979) (no fee awarded under nearly identical attorney's fee provision of Title VII when plaintiff failed to prove entitlement to any relief under the statute.)

In addition, the plaintiff does not allege and the record does not indicate that the plaintiff's lawsuit was a "catalyst" which caused the defendant to make significant changes in the classification system. Although officials at the state penitentiary did attempt to expedite the classification process for NIC prisoners in 1980, this change was caused by the publication of a Tennessee Court of Criminal Appeals decision which restricted the circumstances under which pretrial detainees could be transferred to the state penitentiary. *See State v. Grey,* 602 S.W.2d 259 (Tenn.Cr.App. 1980).[3] Prior to the *Grey* decision, the

---

2. The plaintiff could not have received injunctive relief for himself since he had already been classified and released into the general prison population at the time he commenced this action.

3. In *State v. Grey,* 602 S.W.2d 259 (Tenn.Cr. App.1980), the Tennessee Court of Criminal Appeals held that pretrial detainees may not be transferred to the state penitentiary under former *Tenn.Code Ann.* § 41.1125 (*Tenn.Code Ann.* § 41–4–121(c)) absent a finding by the transferring court that there was no nearby county jail which was sufficient to contain the prisoner safely. *Id.* at 260–61. Although the holding did not directly affect post-trial prisoners such as the plaintiff, the court did refer to Tennessee's post-conviction transfer statute, former *Tenn.Code Ann.* § 40–3108 (*Tenn.Code Ann.* § 40–23–107(a)), in its analysis.

warden's procedure upon receiving an NIC prisoner was to have a records clerk at the main prison contact the committing court to request that the prisoner's commitment papers be forwarded to the prison. After *Grey,* the warden himself contacted the committing court. This change, however, was implemented long before the district court filed its initial opinion in this action.

 Since the plaintiff has failed to establish his entitlement to any relief and has failed to demonstrate that his lawsuit caused the defendant to alter the classification process for NIC prisoners, we hold that the plaintiff is not the prevailing party in this action.

Accordingly, the judgment of the district court is Affirmed.