IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**STATE OF TENNESSEE v. AUSTIN DRUMMOND**

**Circuit Court for Lake County**
**No. 23-CR-10945, 24-CR-11036**

───────────────────────────────

**No. W2025-01799-CCA-R10-CO**

───────────────────────────────

**ORDER**

This matter is before the Court upon the Defendant's application for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Defendant seeks review of the trial court's order transferring the Defendant to the custody of the Tennessee Department of Correction (TDOC) for safekeeping prior to trial. The Defendant argues that the trial court lacked statutory authorization to transfer a pretrial detainee to TDOC custody or, alternatively, that the facts of this case do not support such a transfer. The State has filed a response in opposition, arguing that the trial court has not so far departed from the accepted and usual course of judicial proceedings as to require immediate review. We conclude that extraordinary review is "necessary for complete determination of the action on appeal." Tenn. R. App. P. 10(a)(2). Therefore, we hereby GRANT the Defendant's application for extraordinary appeal. However, further briefing and argument are not required. *See* Tenn. R. App. P. 10(d). For the reasons set forth below, we AFFIRM the judgment of the trial court.

**Background**

On November 13, 2023, the Defendant was indicted by the Lake County grand jury for possession with intent to sell over 26 grams of methamphetamine, possession with intent to sell over ½ ounce of marijuana, possession of controlled substances in a penal facility, possession of a weapon in a penal facility, and possession of a weapon during the commission of a dangerous felony. On November 4, 2024, the Defendant and a codefendant were indicted by the Lake County grand jury for attempted first degree murder and possession of a weapon in a penal facility.[1] At the time of these offenses, the

---

[1] The Defendant was also indicted by the Trousdale County grand jury on February 18, 2025, for possession with intent to sell over 300 grams of methamphetamine, possession with intent to sell over ½ ounce of marijuana, and two counts of taking or sending controlled substances into a penal facility. Only the Lake County offenses are before this Court.

- 1 -

Defendant was in TDOC custody serving a ten-year sentence for aggravated robbery. *See State v. Drummond*, No. W2014-02553-CCA-R3-CD, 2016 WL 3098136 (Tenn. Crim. App. May 25, 2016). However, it appears that that sentence has since expired, and the Defendant was released on a pretrial bond with respect to these indictments.

The Defendant's pretrial bond was revoked in August 2025 when he was arrested for murder and kidnapping.[2] Due to the "limited resources" of the Lake County Sheriff's Department, the Defendant was housed in the neighboring Obion County jail. On October 16, 2025, the State filed a motion to transfer the Defendant to TDOC for safekeeping due to the Defendant's "consistent pattern of misbehavior." The State alleged that the Defendant's conduct – which included possessing controlled substances, covering the window on his cell door with paper and feces, and threatening violence against the correctional officers – "poses a substantial risk to correctional employees and the facilities" and "exceeds the abilities, resources, and security measures of both the Lake County jail and the Obion County jail."

The Lake County Circuit Court held a hearing on the motion on October 27, 2025. Karl Jackson, the Obion County Sheriff, testified that the Defendant had been housed in the maximum-security area of the Obion County jail since August. Sheriff Jackson testified that safely maintaining the Defendant caused "a lot of undue burden and undue stress." He stated that "at least six officers" were currently present in court to maintain security, which was "costly." Sheriff Jackson testified that two officers had to deal with the Defendant consistently while wearing body cameras and that he was concerned about losing personnel if he were to continue to house the Defendant.

Mitchell Maynard, a captain at the Obion County Jail, testified that the Defendant had had several incidents written up and "more than two or three" disciplinary infractions. Captain Maynard testified that the Defendant had been spoken to about not covering the window of his cell door with paper, which prevented officers from observing inside the cell, creating a safety issue for both the officers and the inmate. Captain Maynard was then notified that the Defendant had covered the window as well as the walls of his cell with feces, which required cleanup. The Defendant also created "a distraction" to the officers by throwing letters on the floor, causing the officers to focus on the Defendant rather than other duties. During a cell search, approximately 39 strips of Suboxone were found on the Defendant's person, though he had not yet been charged with possession of contraband because the incident was still being investigated. Captain Maynard testified that disciplinary measures, such as the removal of privileges, had not stopped or limited the Defendant's behavior. Captain Maynard testified that handling the Defendant for a

---

[2] The Defendant was subsequently indicted by the Lake County grand jury on November 10, 2025, for four counts of first degree murder, especially aggravated kidnapping, possession of a firearm by a convicted felon, and four counts of employing a firearm during the commission of a dangerous felony.

long period of time would require "a lot more help." During cross-examination, Captain Maynard testified that there was a message in the feces that the Defendant wanted to speak to his lawyer. Captain Maynard testified that since his arrival, the Defendant had been under increased security and segregated from other inmates.

Bryan Avery, the Lake County Sheriff, testified that the Defendant was immediately sent to the Obion County Jail after being processed in Lake County for "safety reasons" due to the "notoriety of his case." Sheriff Avery testified that the Lake County Jail was not "equipped to house" the Defendant because they did not have a way to isolate him from other inmates. Sheriff Avery testified that the Lake County Jail was short-staffed and did not have a maximum-security area.

The Defendant did not testify, but defense counsel submitted a letter from the Defendant that was admitted as an exhibit for identification purposes only. In the letter, the Defendant denied the State's allegations and claimed that he had been "respectful and well mannered." The Defendant also claimed that he was working as "an informant against corruption in TDOC," which put his safety at risk. Finally, he claimed that correctional officers had conspired with other inmates to assault the Defendant.

After hearing the testimony and arguments, the trial court found that "the defendant has created the need for heightened security and supervision." The trial court found that the Defendant's case was not comparable to "any inmate who misbehaves" in the jail. The trial court found that the Defendant "pose[d] a significant behavior and security risk." The trial court concluded that a transfer to TDOC custody was "authorized by statute and appears wholly appropriate in this case." The trial court noted that the Defendant's being housed in TDOC had "absolutely no effect or bearing on the presumption of innocence" and ordered the State to keep defense counsel informed of the Defendant's location.

On October 29, 2025, the trial court entered an order granting the State's motion to transfer the Defendant to TDOC. On November 13, 2025, the trial court entered an amended order relying upon Tennessee Code Annotated § 41-4-121. The trial court specifically found that "the Lake County jail is insufficient to house and keep safe this inmate, and no other jail or detention facility, located reasonably close, is sufficient to house and keep safe this inmate." The order stated that the trial court would review the issue at least once every thirty days to determine whether the order needed to be modified or terminated.

On November 4, 2025, the Defendant filed a motion for permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. Relying upon *State v. Grey*, 602 S.W.2d 259 (Tenn. Crim. App. 1980), the Defendant argued that review of his pretrial transfer to TDOC would be ineffective upon entry of final judgement because the issue would be moot. *See* Tenn. R. App. P. 9(a)(1). The Defendant also asserted that

there was a need to develop a uniform body of law regarding the interpretation of Tennessee Code Annotated § 40-23-107 and § 41-4-121. *See* Tenn. R. App. P. 9(a)(3).

Although the State did not oppose the motion, on November 14, 2025, the trial court entered an order denying the Defendant's request for an interlocutory appeal. The trial court reiterated its finding that "the Lake County jail does not have adequate facilities to secure or protect the defendant" and that "the defendant has presented significant disciplinary issues during his incarceration in the Obion County jail." The trial court stated that based on the testimony from the hearing, "the Obion County Sheriff's Department cannot manage the defendant's behavior," which "has created a morale issue within the correctional officers at the jail." The trial court found that the Defendant's claim that he would be "subject to some vaguely referenced and undefined 'stigma' by virtue of being held by [TDOC]" prior to conviction did not constitute an irreparable injury under Rule 9(a)(1). The trial court stated that the Defendant did not have "some conferred right to be detained in a particular facility with no concurrent responsibility for his own behavior." The trial court found that there was no need to develop a uniform body of law regarding pretrial transfer to TDOC because *Grey* had addressed the issue. However, the trial court recognized that "[r]eview of this issue is somewhat elusive because of the temporary nature of the effect of the [c]ourt's order."

**Analysis**

## I.  Review Pursuant to Tennessee Rule of Appellate Procedure 10

Rule 10 provides for the granting of an extraordinary appeal in the discretion of this Court alone where the trial court has "so far departed from the accepted and usual course of judicial proceedings as to require immediate review" or "if necessary for complete determination of the action on appeal." Tenn. R. App. P. 10(a). "The circumstances in which review is available . . . are very narrowly circumscribed to those situations in which the trial court . . . has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal." Tenn. R. App. P. 10, Adv. Comm. Cmt. As the Tennessee Supreme Court has explained:

> An appellate court should grant a Rule 10 extraordinary appeal only when the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain or palpable abuse of discretion, or results in either party losing a right or interest that may never be recaptured.

*Gilbert v. Wessels*, 458 S.W.3d 895, 898 (Tenn. 2014) (citing *State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007); *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)).

When a trial court has denied a party's application for an interlocutory appeal, "the appellate court must respect the trial court's discretionary decision not to grant permission to appeal under Rule 9 and refrain from granting a Rule 10 appeal" unless "the trial court's alleged error qualifies for immediate review under the specific criteria indicated by Rule 10." *Id.* at 899. We conclude that such circumstances exist in this case. In *Grey*, this Court concluded that interlocutory review of a pretrial transfer order was necessary because review upon final judgment would be ineffective. 602 S.W.2d at 260. Like the issue of a defendant's pretrial release on bond, appellate review of a defendant's pretrial detention would be "of no practical effect or benefit" following a final order of conviction.[3] *See State v. Melson*, 638 S.W.2d 342, 358 (Tenn. 1982). Denying the Defendant's application for extraordinary appeal would be a denial of his day in appellate court on this issue and would potentially result in the Defendant losing a right or interest that may never be recaptured. *But see Noel v. State*, No. W2010-00088-CCA-R3-PC, 2011 WL 744759, at *7-8 (Tenn. Crim. App. Mar. 3, 2011) (reviewing a defendant's pretrial transfer to TDOC on post-conviction to determine if it violated his due process or double jeopardy rights). Thus, under the specific criteria of Rule 10, immediate review is necessary for a complete determination of the action on appeal. Tenn. R. App. P. 10(a)(2).

## II. Pretrial Transfer to TDOC Custody

Under Tennessee Code Annotated § 41-4-121(a)(1), "The sheriff has the authority, when the jail of the county is insufficient for the safekeeping of a prisoner, to convey the prisoner to the nearest sufficient jail in the state[.]" Further, the trial court "may order the prisoner to be removed to the nearest sufficient jail" upon application of the sheriff that the jail has become "insufficient for any cause." T.C.A. § 41-4-121(a)(3). The statute requires the trial court to review its order once every thirty days to determine whether the order needs to remain in place, be terminated, or be modified. T.C.A. § 41-4-121(b).

In *State v. Grey*, this Court analyzed whether a pretrial transfer to TDOC custody was permitted under the predecessor statutes to the one in question. 602 S.W.2d 259, 260 (Tenn. Crim. App. 1980). This Court concluded that "the General Assembly did not intend to include the state penitentiary within the meaning of the term jail" as used in the statutes and held that an order transferring a pretrial defendant to the penitentiary "would not be justified *unless* the transferring court found that there was no nearby jail sufficient to contain the prisoner safely." *Id*. 261 (emphasis added). This Court vacated the trial court's transfer order because it failed to "include an explicit finding that the local jail is insufficient for this defendant's safekeeping, but recites only that he is a 'security risk' . . .

---

[3] Although the State asserts that "the defendant will not lose the opportunity to seek review of this issue in a subsequent appeal as of right after the entry of final judgment," they do not suggest what the potential remedy would be at that point if this Court were to determine that the trial court had erred.

based on hearsay evidence." *Id*.

The Sixth Circuit has noted that *Grey* stands for the proposition "that pretrial detainees may not be transferred to the state penitentiary . . . absent a finding by the transferring court that there was no nearby county jail which was sufficient to contain the prisoner safely." *Dover v. Rose*, 709 F.2d 436, 439 n.3 (6th Cir. 1983). Similarly, in a 2011 post-conviction case, this Court concluded that the trial court had the legal authority under *Grey* and Tennessee Code Annotated § 41-4-121 to transfer the defendant to the penitentiary pretrial after it found that the county jail was unable to control the defendant's behavior and that "there was 'no other jail reasonably close . . . sufficient to house and keep safe this prisoner.'" *Noel*, 2011 WL 744759, at *8. Thus, it is clear that *Grey* remains good law.

In this case, the Defendant was housed in the Obion County Jail because the sheriff of Lake County had already determined that his jail was insufficient to safely keep the Defendant due to the lack of a maximum-security area and a means of segregating him from other inmates. *See* T.C.A. § 41-4-121(a)(1). The trial court heard proof that the Defendant created constant disciplinary issues despite repeated warnings and the removal of privileges. The Defendant's actions created a risk to both his and the officers' health and safety. After hearing the evidence presented, the trial court made the appropriate finding that "the Lake County jail is insufficient to house and keep safe this inmate, and no other jail or detention facility, located reasonably close, is sufficient to house and keep safe this inmate." The evidence before this Court does not preponderate against this finding.

Accordingly, the trial court's order transferring the Defendant to TDOC custody is hereby AFFIRMED.

s/ Camille R. McMullen, Judge
s/ J. Ross Dyer, Judge
s/ John W. Campbell, Judge